McGowan vs. Chicago & Northwestern R. Co.

McGOWAN, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*September 27 — October 22, 1895.*

(1) *Admission of original evidence in rebuttal: Discretion.* (2–4) *Negligence: Proximate cause: Railroads: Injury to brakeman coupling cars: Special verdict.*

1. The admission of original evidence in rebuttal is not shown to have been an abuse of discretion in this case, although plaintiff and his counsel knew of such evidence and had the witnesses in attendance before the close of his case, it not appearing that the evidence was unfairly withheld to surprise the defendant, or that defendant was prejudiced by the ruling.

2. In an action for an injury alleged to have been caused by negligence it should appear, in order to warrant a recovery, not merely that the injury was the natural consequence of defendant's act or omission, but also that it might reasonably have been expected to result therefrom.

3. In an action against a railway company for injuries sustained by a brakeman while coupling cars and alleged to have been caused by a sudden sinking of the roadbed and track, although it was found by the special verdict that the track was not in a reasonably safe condition; that there was a sudden sinking of the roadbed and track at the time and place of the accident; that the defendant was guilty of negligence which occasioned the injury, in failing to keep the road in proper repair; and that by the exercise of ordinary care and prudence it might have discovered and repaired the cause of the accident before it occurred,— it is *held* that it was error to refuse to submit the question whether defendant had any reason to apprehend such a sinking of the roadbed and track. Defendant had a right to have that question submitted, so that the question of proximate cause might be fully considered and decided by a special answer.

4. A special verdict must directly, fairly, and fully respond to the material issues in the case, and should be sufficiently certain to stand as a final decision of the special matters with which it deals

APPEAL from a judgment of the circuit court for Dane county: R. G. SIEBECKER, Circuit Judge. *Reversed.*

This action was brought for the recovery of damages sus-

tained by the plaintiff from an injury received while in the employ of the defendant and engaged in the line of his duty as brakeman, and by reason of its alleged failure to provide a reasonably safe and suitable track and roadbed upon which he might perform his duties; his left arm having been caught between the deadwoods or bumpers of two cars which he was attempting to couple together, and crushed. The charge of negligence is that, where the plaintiff attempted to make such coupling at a point on a sidetrack from its main line and yard, running to certain manufacturing works in Madison, called the "furnace track," the defendant "negligently and carelessly failed to keep and maintain its roadbed . . . in a firm, substantial, or proper condition, *in that said roadbed at said point was not properly ballasted up* so as to be firm and solid, and the *ties* upon which the rails rested *were old and rotten,* and that said track at said point was *exceedingly shaky and infirm,* especially during the spring of the year, *by reason of the larger amount of moisture* incident to that season of the year,— all of which facts *existed, to the knowledge* of the defendant, at the time of said injury and long prior thereto," but of which the plaintiff was ignorant; that at the time of the injury the defendant had backed a train of cars in upon said track from the north, in order to couple to and take out a car standing on said track at said point; that the stationary car and the southerly car in the train to which it was to be coupled were both heavily loaded, and were equipped with a coupling appliance called a "double deadwood," consisting of two iron buffers attached to the end of each car, one on each side of and contiguous to the drawbar, and so adjusted that the bottom thereof was about even with the top of the drawbar, and so that when two cars thus equipped came together to be coupled the ends of the buffers nearly met; that the top of said deadwoods extended so far above the drawbars on said cars that it was impossible to make a coupling by reaching

over said deadwoods and inserting the link, but it was necessary, in order to insert it, to reach under such deadwoods; that, after the plaintiff had stepped upon the track between said cars to make the coupling, and while he was so reaching under the deadwoods to insert the link in the coupling attached to the stationary car, with due care and caution on his part, yet, owing to the negligence of the defendant in thus failing to keep and maintain its roadbed and track in a substantial manner, the cars, buffers, and drawbars suddenly and without warning sank or fell two or three inches, and the plaintiff's left forearm was caught between the deadwoods or buffers of said cars, and injured as alleged, he being wholly unable to adjust his arm to the altered elevation of said drawbars and deadwoods in time to avoid injury.

The defendant admitted that the plaintiff was injured while attempting to make a coupling of said cars, but alleged that his injury was caused by the want of due care on his part, and denied all other material allegations, save its corporate existence.

At the trial before a jury the plaintiff testified as to the manner in which he received the injury, in substance that he walked down the west side of the track to make the coupling, and walked in on the track on the south side of a covered culvert three or four feet wide, in front of the moving car, and fixed the link in it; the other, or stationary car, being about eight or nine feet ahead of him, and was loaded with pig iron, and there were about three cars being pushed down to be coupled onto it, and the one next to him was loaded in the same manner. "After I fixed the link in the moving car, I walked down ahead and fixed the pin in the stationary car, and waited there. I had one foot over the rail and the other about the middle of the track. . . . I had hold of the link, and was going to put it in the drawbar, and the car sunk and caught me. . . . Just as it got pretty near there, the car sunk and caught me. I should

judge about two or three inches. The place where I got caught was about eight feet south of the culvert, about a foot or so north of a joint where two rails come together. As soon as it caught me, I saw the car sink. That is the first I noticed it. In my judgment, if the track had not sunk I could have made the coupling without being caught. This settling, in my judgment, was sudden. This was a warm day for that time of the year [in March]. There was water on the ground, caused by melting snow, pretty near up to the rails." On cross-examination he testified that both cars sunk down; "the bumpers sunk, after they hit me, a bit;" that he was facing towards the stationary car, with his back partially towards the other car, and he was using his left hand to make the coupling; that he thought the rails and ties went down. 'He was asked, "How could the ties go down without the whole roadbed going down? *Ans.* The ties were pretty rotten. *Ques.* That is all you know about it? *Ans.* I don't know;" and he thought the whole roadbed gave away. On redirect examination his attention was called to what he said about the ties, and he added that "the ties seemed to be rotten at the place where he got hurt;" and on recross-examination, on being asked, "When did you see that the ties were rotten?" he answered, "When I was out there this summer;" that he was out in February and in March, 1894. On redirect examination he was asked whether he saw at that time (about one year after his injury) how rotten they were, and he answered: "Why, the ties were rotten, and badly rotten. There was one that was broke right off, right about where I got hurt; right at the joint of the rails." John Nader, on behalf of the plaintiff, testified to having made an examination of the place where the accident is alleged to have occurred, the plaintiff and one of his attorneys being present, in April, 1894, and to having made a survey and map of the premises, and spoke of the joint in the west rail referred to, and described the

situation and contiguous grounds. The defendant moved for a nonsuit, which was denied.

On behalf of the defendant, Mr. Cowan, the superintendent, testified that he had been over the track nearly every year, and that he should call it a good, firm, solid track; and that he could not recall any report that there was anything wrong with it, nor had he observed anything "otherwise than that it was a good track." On cross-examination he said that he had walked over it three months before, and noticed its condition at the culvert as to the ties, and that he did not notice any place there where the ties were rotted off and the end of the tie gone; that if there was no tie under the rail, he would not consider the track in perfect shape, "but we often have ties all rotted out, and call the track safe to do business on;" that if there were two ties rotted off and gone next to a joint in the rail, he would not call it in good condition. George Albright, a switchman, who had known the sidetracks at this point from August 15, 1891, to July, 1894, and had been on them very nearly every working day, winter and summer, testified that the track was all right, as far as he knew anything about it. It was firm and solid; was up in good shape; never noticed that it yielded when locomotives went over it; never knew of its sinking away; and that he was there when the accident occurred. And similar testimony was given by other witnesses acquainted with the place, as the assistant yardmaster, the engineer of the switch engine, and the track foreman. The latter testified, on cross-examination, that the rotting of two ties would not make the road unsafe, and he would leave them in there all the same. He was shown a rotten tie, and asked if he would leave in a tie rotted as bad as it was, and he answered not if he noticed it. He said: "Take out every other tie on that track, and it would be a safe track."

After the defendant had rested, the plaintiff recalled the witness Nader, who was permitted, against the objection of

the defendant that it was not evidence in rebuttal, to testify that he, in company with one Lefferts, made an examination of the track in April, 1894, where the joint was in the rail, the plaintiff being present; that "at the joint in question there were two old ties, one on each side of the joint; these ties were about eighteen inches apart, and both old ties; one was rotten, and the west end of it broken off entirely, and the other was an old, rotten tie, and I discovered day before yesterday that the end of that is broken; that tie was there when I made the first examination; at that time the rotten end of one of these ties was picked up and carried off with a wire around it." It was here presented and identified by the witness, and he said the rest of it was still in the track. "South of the joint was one of the old ties spoken of; next to it was a new tie; and north of the one that was broken off were two old ties." Against like objection, said Lefferts was allowed to and did testify in substance the same as Nader; and on re-examination the plaintiff, against the same objection, testified that he was out with Nader and Lefferts, and saw the piece or end of the tie in question picked up, and it was presented as evidence.

The defendant asked the court to submit the following questions, among others, for a special verdict: "(3) Was there, at the time of the accident, a sinking of the roadbed and track, occurring suddenly at the place where the cars were, which sinking caused the injury? (4) Did the defendant have any reason to apprehend such a sinking of the roadbed and track thereon?" These several requests were refused, except in so far as No. 3 was embraced in the third question submitted to the jury, the words, "which sinking caused the injury," having been excluded therefrom.

The jury found a special verdict, in substance: (1) The accident occurred on the furnace track. (2) The sidetrack in question was not, at the time plaintiff received his injury, in a reasonably safe condition for the purposes of a sidetrack

kept for the uses of this one.   (3) There was, at the time of the accident, a sinking of the roadbed, occurring suddenly at the place where the accident occurred.   "(4) *Ques.* Was the defendant guilty of negligence which occasioned the injury to the plaintiff, and, if so, what was it?   *Ans.* Yes; through neglect to keep the road in proper repair.   (5) *Ques.* If you find the defendant was guilty of negligence which caused the injury complained of, then could the defendant, by the exercise of ordinary care and prudence, have discovered and repaired the cause of accident before the accident occurred? *Ans.* Yes."   It was found that the plaintiff was not guilty of any want of ordinary care which contributed to the injury, and his damages were fixed at $6,000.

A motion for a new trial on the ground that the verdict was against the law and the evidence and upon the points arising at the trial was denied, and the plaintiff had judgment on the verdict, from which the defendant appealed.

For the appellant there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.*

For the respondent there was a brief by *Olin & Butler,* and oral argument by *H. L. Butler.*

PINNEY, J.   1. The general rule is that after the evidence of the defendant is closed the plaintiff will be confined to rebutting evidence, and will not be allowed to produce original or direct evidence on his part, or go into his original case again; but the rule is not inflexible, and the court may, in its discretion, allow or refuse to receive such evidence. *Campbell v. Moore,* 3 Wis. 771.   The plaintiff or party holding the affirmative must try his case out when he commences, and is bound to introduce all the evidence on his side, except that which operates merely to answer, avoid, or qualify the case as made out by his adversary's proof.   At this alone the evidence in reply must be directed, but for sufficient reasons it may be found advisable to depart from

the rule in order to attain complete justice. When this ought to be done must be left to the sound discretion of the court, and in general its action in this respect cannot be assigned as error. *Hastings v. Palmer*, 20 Wend. 225. This discretion, however, must not be exercised so as to deprive or abridge the right of a party against whom it is produced to rebut it. It is no objection to the reception of such evidence that, in addition to rebutting the defense or case of the party against whom it is offered, it incidentally tends to corroborate or sustain the case made in chief. 1 Thomp. Trials, §§ 346, 348; *Winchell v. Winchell*, 100 N. Y. 159, 163; *Ankersmit v. Tuch*, 114 N. Y. 54. It is evident that the plaintiff and his counsel both knew of the existence of the testimony sought to be introduced as rebutting, and had the witnesses in attendance before the close of the plaintiff's case, and in fact examined one of them in support of his original case, but without any allusion to the matters thus offered. We cannot say, upon the record before us, that this evidence was unfairly withheld to surprise the defendant, or that the court ought not, in the exercise of its discretion, to have received it when offered. Doubtless the court should have received evidence on the part of the defendant in reply, and should have taken such course as to protect the substantial rights of the defendant; but the record fails to show that the defendant was prejudiced by the ruling or by any denial in this respect.

2. Whether the negligence of the defendant was the proximate cause of the plaintiff's injury was a material and substantial question, and one sharply contested. The defendant had a right to have that question fairly and plainly submitted to the jury, and passed on by the special verdict; and, although the form of the special verdict and manner in which the case is to be submitted are largely in the discretion of the court, it would seem to be advisable in such cases that the questions should be by single, direct, and in-

dependent propositions, admitting of an affirmative or negative answer. Unless the question of proximate cause is fairly and substantially answered by the special verdict, no judgment can be given on it, and a new trial will be necessary. *Kreuziger v. C. & N. W. R. Co.* 73 Wis. 158; *Jewell v. C., St. P. & M. R. Co.* 54 Wis. 610, 618; *Kerkhof v. Atlas Paper Co.* 68 Wis. 674. It was not enough to entitle the plaintiff to recover to show that his injury was in fact the natural consequence of the act or omission of the defendant, but it must have appeared that under all the circumstances it might reasonably have been expected that such an injury would result. A mere failure to ward against a result which could not reasonably have been expected is not negligence. *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141, 156. The plaintiff was not entitled to recover merely because the injury he had received was in consequence of the defendant's track and roadbed having not been maintained and kept in repair. In order to warrant a recovery, it must have appeared that its failure in this respect was the result of negligence on its part, and that a person of ordinary intelligence and prudence might have expected, as the result of such negligence, that such an injury would have occurred. It is only by proof of these indispensable facts that an unbroken connection between the wrongful act and the injury can be established, and so constitute a continuous succession of events so connected as to make a natural whole and show that the defendant's negligence and the injury of the plaintiff stand in the relation of cause and effect. The gist of the action is negligence on the part of the defendant, and such relation of cause and effect could be established only by thus showing that the negligent act or omission of the defendant caused the injury and was its proximate cause.

The defendant requested the court, in this view, to submit to the jury a question clearly within the issue, "Did the defendant have any reason to apprehend such a sinking of the

roadbed and track thereon?" In his complaint the plaintiff
attributed his injury to a sudden sinking of the roadbed and
track where he was engaged in coupling cars. The court
refused to submit this material question, and we are unable
to see that it was in substance embraced in or submitted by
the special verdict. In answer to the second and third ques-
tions, the jury found that the sidetrack was not in a reason-
ably safe condition for the purposes of a sidetrack, and that
at the time of the accident there was a sinking of the road-
bed, occurring suddenly, at the place of the accident. Thus
far nothing is found as to its cause. The next question is
simply whether the defendant was guilty of negligence
which occasioned the injury, and, if so, what was it? This
is answered, "Yes; through neglect to keep the road in
proper repair," but there is no finding in the verdict that the
sinking of the roadbed had anything to do with the accident,
although the complaint charged that this was the cause of
the injury; and there is no subsequent reference in the spe-
cial verdict to that matter. The fourth question and answer
do not find that a person of ordinary intelligence and pru-
dence would have reasonably expected the injury in question
as a consequence of the imputed negligence and neglect to
keep the road in proper repair. The fifth question is not
very clearly expressed, but conceding that it refers to the
fourth finding, and, with its answer, is to the effect, upon a
liberal construction, that the defendant, by the exercise of
ordinary care and prudence, "could have discovered and re-
paired the *cause of the accident*," namely, the want of proper
repair of the road, it wholly fails to find that the defend-
ant's negligence was the proximate cause of the plaintiff's
injury, or that the want of repair, even though negligent,
was such that a person of ordinary intelligence and prudence
would have reasonably expected that the injury in question
would have happened in consequence of it. The finding that
the defendant could, "by the exercise of ordinary care and

prudence, have discovered and repaired the *cause* of the ac-
cident (the defective condition of the roadbed) before the
accident occurred," is not, of itself, sufficient, because it
leaves the question of proximate cause untouched and still
at large.    It was error to refuse to submit the question pro-
posed by the defendant's counsel.    We do not find it neces-
sary to decide that the fourth question and answer may not
show sufficiently, in general terms, that the defendant was
guilty of negligence which caused the plaintiff's injury, and
that such finding would not sustain a judgment for the
plaintiff.    The question is a compound one, and very defect-
ive in form.    We hold that the defendant had a right to
have the rejected question submitted, so that the question of
proximate cause might be fairly considered and decided by
special answer, in view of the rule of law as to what consti-
tutes such cause, so that the finding on that point might be
really a special one and not merely a general conclusion.

It is strenuously objected to the fourth and fifth questions
as framed, and the answers to them, that, as already stated,
it does not appear that the matters embraced in them have
any relation to or connection with the alleged cause of ac-
tion stated in the complaint, except in point of time and
place, or to the fact established by the third finding, that
"at the time of the accident, a sinking of the roadbed and
track occurred suddenly at the place where the accident oc-
curred," and so it does not appear from the verdict whether
or not it rests upon the substantive charge contained in the
complaint or on extrinsic matters.    A verdict must be cer-
tain, at least to a common intent.    It must directly, fairly,
and fully respond to the material issues in the case.    It
should be sufficiently certain to stand as a final decision of
the special matter with which it deals, for it is of the utmost
importance that the record should be definite and certain
and show unequivocally what matters have been adjudicated,
so that the decision may be final regarding the questions in

issue. 28 Am. & Eng. Ency. of Law, 384, and cases in notes. In *Carroll v. Bohan*, 43 Wis. 218, 221, it is said that "special verdicts are worse than useless if courts do not submit for them single, direct, and plain questions, and insist upon positive, direct, and intelligible answers. Indirect, evasive, uncertain, or unmeaning answers should not be received; and when none other can be drawn from a jury the verdict should not stand for a moment."

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.