THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY v. BERRY.

[No. 18,398. Filed April 6, 1899. Rehearing denied June 13, 1899.]

PLEADING.—*Negligence.—Complaint.—Demurrer.*—A general allegation that defendant, a railroad company, carelessly and negligently permitted a heavy iron pin to be placed and to remain on the tender of its locomotive is sufficient to repel a demurrer in the absence of a statement of specific facts showing otherwise. *pp. 609, 610.*

SAME.—*When Pleading Not Sufficiently Specific.—Remedy.*—Where a complaint is not sufficiently specific the remedy is by motion. *p. 612*

RAILROADS.—*Operation of Trains on Track of Another Company.— Negligence.—Liability.*—A railroad company operating its trains on the track of another company is responsible for the negligence of its employes, whether in so operating its trains it is a trespasser, or is operating under a contract authorized by sections 1 and 3 of the act of March 10, 1873. *pp. 610-613.*

SAME.—*Injury to Employe Standing Near Passing Train.—Contributory Negligence.*—One in the employ of a railroad company, who is injured by an iron pin thrown from a passing train, is not shown to be guilty of contributory negligence by the finding of a special ver-

dict that such employe knew the character of the train, when it was due, its usual rate of speed in passing that point, and before it. came along stepped aside at least ten feet from the track, and that the place to which he withdrew was safe from risks that might reasonably be apprehended. *p. 613.*

PRACTICE.—*Motion for Judgment on Answers to Interrogatories.*— Where a motion for judgment on answers to interrogatories is general, the motion must be overruled if the answers are consistent with the general verdict under either paragraph of complaint. *p. 614.*

RAILROAD.—*Iron Pin Thrown from Tender of Passing Train.*—*Injury to Person Near Track.*—*Evidence.*—Evidence that an iron pin was thrown from the top of a locomotive tender running forty-two miles an hour, on a two-degree curve, on a smooth track, and struck plaintiff ten feet distant from the track and eight feet below the top of the tender does not support an allegation of the complaint that the pin was so thrown by the rapid motion of the train. *pp. 617, 618.*

SAME.—*Negligence.*—*Evidence.*—In an action against a railroad company for injuries to plaintiff, caused by an iron pin being thrown from the tender of a passing train by its speed, a verdict for plaintiff is not supported by evidence which does not disclose that the pin was on the tender in a position from which a reasonably prudent person would anticipate that it might be thrown off by the movement of the train, or that, if the pin were in a dangerous position, the defendant knew, or by the exercise of reasonable diligence might have known of it in time to have obviated the risk. *p. 618.*

From the Scott Circuit Court. *Reversed.*

*B. K. Elliott, J. T. Dye* and *C. E. Cowgill,* for appellant. *J. B. Brown, J. H. Shea, E. Hough, A. G. Smith* and *C. A. Korbly,* for appellee.

BAKER, J.—Action to recover damages for personal injury. Appellee was inspector of track for the Baltimore and Ohio Southwestern Railway Company in Scott county. Appellant ran trains over this track. While appellee was engaged in his work, appellant's train approached. Appellee stepped aside ten feet from the track. As the train passed, going about forty miles an hour, a large iron pin came from the tender and hit appellee across the back.

Complaint in three paragraphs. Demurrer to each overruled. Answer of general denial. Jury returned general

verdict for appellee on second and third paragraphs, and also answers to interrogatories. Appellant's motions for judgment notwithstanding, for new trial, and in arrest, were overruled.

Appellant insists that neither the second nor third paragraph sufficiently states negligence. The second paragraph charges: "That on the 28th day of July, 1896, while the plaintiff was at a point on said right of way about one mile south of Lexington, where his duties as aforesaid required him to be, having taken a position on the east side of and about ten feet from said railroad track, in order to permit a certain passenger train to pass, then and there being run and managed by said defendant's servants, he, the said plaintiff, was violently struck by a large, heavy iron pin, which had been carelessly and negligently permitted to be and remain on the tender of the locomotive attached to the defendant's said train, by the servants of said defendant, in such a manner that the motion of said train, which was being propelled at a very high rate of speed, threw said heavy iron pin off of said tender, where it had been carelessly and negligently permitted to be and remain by said defendant, striking the plaintiff." The third avers: "That the defendant negligently and carelessly suffered and permitted a large, heavy iron pin to be so placed on the tender of its aforesaid locomotive that said pin was by the speed of said train thrown off therefrom against the plaintiff."

The gist of the argument is that the complaint is bad because no allegation is made that it was dangerous to carry the iron pin on the tender; nor that the pin was placed or suffered to remain in an unsafe position; nor where one might reasonably expect that it would be thrown off by the movement or speed of the train. The complaint charges that the plaintiff was injured by the defendant's permitting the iron pin to be and remain (second paragraph) and to be placed (third paragraph) on the tender in such a manner that the movement

of the train threw it from the tender against the plaintiff; and that this act, causing the injury, was "negligently" done. A general allegation of negligence is sufficient to repel a demurrer for want of facts. This means, not that the pleading is good by charging that the plaintiff was injured "by the negligence of the defendant", but that it is sufficient if the act, stated as the cause of the injury, is alleged to have been "negligently" done. Bliss on Code Pl. section 211 a; Works' Pr. & Pl. section 400; Black's Pl. in Ac. Cas. section 139; Maxwell on Code Pl. pp. 251-2; Bryant's Code Pl. pp. 336-7; Boone on Code Pl. section 174; Baylies on Code Pl. section 40. If the pleader goes beyond this general allegation and sets forth the specific facts that he claims made the act causing the injury negligent, the specific averments may overbear the general and render the pleading obnoxious to demurrer. A defendant is entitled to a statement of the specific facts; but, if the complaint does not contain it, his remedy is by motion. *Louisville, etc., R. Co.* v. *Bates,* 146 Ind. 564, and authorities there collated. The statements in *Weis* v. *City of Madison,* 75 Ind. 241 on page 246, 39 Am. R. 135, and in like cases, cited by appellant, to the effect that, if the facts pleaded do not in themselves show negligence, the qualifying adverbs, "carelessly" and "negligently" can not make up the insufficiency, apply not to complaints that rest upon the general allegation of negligence but to those that set forth the facts specifically.

Appellant urges, also, that each paragraph is bad by reason of this averment: "That the defendant was, on the 28th day of July, 1896, and had been for some time prior thereto, running its cars and locomotives over the track and right of way of the Baltimore and Ohio Southwestern Railway Company between North Vernon, Indiana, and Louisville, Kentucky". The contention is that, there being no allegation of a contract between the companies by which appellant had the right to control the operation of its trains over the other's road, the presumption arises that the latter company alone had author-

ity to direct and control train operatives between the cities named (where the accident occurred); that this presumption overcomes the averment that appellant's servants were running the train in question; and that, therefore, the doctrine of *respondeat superior* does not apply to appellant.

In the case of *Atwood* v. *Chicago, etc., R. Co.*, 72 Fed. 447, it appears from the evidence (the complaint was silent in these particulars, but seems to have been held sufficient by reason of the allegation that the defendant "operated its trains between Kansas City and Topeka over the railroad of the Union Pacific Company") that the trains of the Rock Island Company were run between Kansas City and Topeka over the tracks of the Union Pacific Company under a contract in which it was agreed that the Union Pacific Company alone should make rules and regulations for the operation of all trains over its tracks between the points named and that the trains of both companies should move under and in accordance with the orders of the superintendent or train dispatcher of the Union Pacific Company. The Rock Island train was manned by employes hired and paid by that company. Atwood, a conductor of a Union Pacific train, was killed in a collision by the alleged negligence of the employes in charge of the Rock Island train. Held, that the employes in charge of the Rock Island train "were absolutely subject to the jurisdiction, control and direction of Union Pacific Company as to the manner and time of running over this track"; that the Rock Island Company could not be held on the doctrine of *respondeat superior* because the negligent employes were not at the time its servants; that "the responsibility of the master grows out of, is measured by, and begins and ends with, his control of the servant." To the same effect, also, are the cases of *Hilte* v. *Republican, etc., R. Co.*, 19 Neb. 620, 28 N. W. 284; *Byrne* v. *Kansas City, etc., R. Co.*, 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693; *Miller* v. *Minnesota, etc., R. Co.*, 76 Iowa, 655, 39 N. W.

188; *Hilsdorf* v. *City of St. Louis*, 45 Mo. 94; *Town of Pawlet* v. *Rutland, etc., R. Co.*, 28 Vt. 297; *Dean* v. *East Tennessee, etc., R. Co.*, 98 Ala. 586, 13 South. 489; *Hardy* v. *Shedden Co.*, 78 Fed. 610, 24 C. C. A. 261, 37 L. R. A. 33.

The first and third sections of an act of March 10, 1873, read: "1. All railroad companies now organized or that may be hereafter organized under the laws of this State, having connecting roads, may enter into contracts by their respective boards of directors, by which the locomotives and trains of one railroad company, for the transportation of freight and passengers, may be run and operated over and upon the track and road of another railroad company, upon such terms as the said companies may agree upon. 3. Every railroad company that shall run and operate its locomotives and trains upon the track and road of another railroad company shall be liable to third persons for all damages occasioned by such locomotives and trains, in the same manner and to the same extent as though the track and road upon which such locomotives and trains were run and operated belonged to the company owning and operating the same." Sections 3999, 4001 R. S. 1881 and Horner 1897, sections 5286, 5288 Burns 1894.

These statutory provisions become charter privileges and liabilities of railroad companies. Appellant had express authority to arrange with the Baltimore Company for the right to operate and control its own trains over the latter's tracks. In so operating, appellant would be as responsible as for its doings on its own right of way. If, under the statute, the two companies were empowered to make a contract by which the Baltimore Company would have exclusive control of the operatives in charge of appellant's trains while upon the Baltimore Company's tracks, so that appellant would not be liable for the negligence of the operatives, and if the complaint exhibited that appellant's train in question was operated under such a contract, the demurrer should have been

sustained. The complaint does not allege that there was a contract at all. But the averment of appellant's continued operation of its trains over the Baltimore Company's road should favor the presumption that appellant was a lawful user of the tracks by permission rather than a trespasser. However, if the presumption be that appellant was a trespasser, it matters not; for a defendant's position is not bettered by having the complaint show that when he committed the wrongful act he was in a place where he had no right to be. The test question is not *where*, but *who*. Each paragraph of the complaint, far from showing that appellant surrendered control of its train to the Baltimore Company, directly charges appellant with the commission of the injurious act. The demurrers were properly overruled.

In support of the motion for judgment on the answers to interrogatories notwithstanding the general verdict, appellant urges that the answers show that the employes whose alleged negligence caused the injury were at the time under the control of the Baltimore Company, and not of appellant. There is no merit in the assignment in view of the general verdict and the answer to this interrogatory propounded by appellant itself: "Was not the defendant, at the time in question, operating its Louisville trains, including the train in question, from North Vernon to Jeffersonville, over the Baltimore and Ohio Southwestern Railroad? Answer, Yes."

Appellant also contends that the jury's answers establish appellee's contributory negligence. To numerous interrogatories, the jury answered in substance that appellee knew the character of the train in question, when it was due, and its usual rate of speed in passing the point where the accident occurred; that he saw this train approach at its usual speed, and before it came along stepped aside at least ten feet from the track; and that the place to which he withdrew was safe from risks that might reasonably be apprehended. These answers tend to sustain rather than to overthrow the general verdict.

Appellant further insists that the jury's answers overbear the general verdict on appellant's negligence. Appellant relies upon the answers to five interrogatories in which the· jury stated that the "evidence failed to show": (1) Who placed the pin upon the tender; (2) where the tender was when the pin was placed upon it; (3) when the pin was placed upon the tender; (4) whereabouts upon the tender the pin was placed; (5) what, if any, employe of appellant placed the pin upon the tender. The motion was general and therefore must be overruled if the answers to interrogatories are consistent with the general verdict under either paragraph of complaint. *Toledo, etc., R. Co.* v. *Milligan,* 52 Ind. 505; *Frazer* v. *Boss,* 66 Ind. 1; *Tucker* v. *Roach,* 139 Ind. 275. The fifth interrogatory was addressed to the issue tendered by the first paragraph of complaint, namely, that appellant's servants placed the pin upon the tender. The jury found in favor of appellant on this paragraph. The second and third paragraphs charge that appellee was injured by ·appellant's permitting the pin negligently "to be and remain" (second paragraph) and "to be placed" (third paragraph) on the tender in such a manner that the movement of the train threw it from the tender against appellee. Without considering whether or not there might be evidence admissible under the third paragraph whereby the general verdict would not be inconsistent with these answers, it may be noted that no interrogatory appears to be addressed to the issue made on the second paragraph. The jury, in answer to interrogatories, said that the fireman, prior to the accident, knew of and saw the pin upon his tender. Although there was no evidence showing when, where or by whom the pin was placed upon the tender, or where the tender was when the pin was placed upon it, yet it is conceivable that there may have been abundant evidence disclosing that the pin was per-· mitted to be and remain on the tender for weeks before the accident happened; that, although it was not known whereabouts upon the tender the pin was placed when it was put

there, the fireman, in shoveling coal or otherwise, caused it to become and to be and remain in a position from which it was likely to be thrown by the movement of the train in the manner alleged; and that the fireman knew of the dangerous position of the pin in ample time before the accident occurred to have obviated the peril. Appellant's motion for judgment was properly overruled.

Appellant presents the question that the verdict is not sustained by the evidence. A careful reading of the bill of exceptions discloses that appellee in his briefs has claimed for the evidence the utmost that can be claimed for it: "The burden of proving appellant's negligence in the use and custody of the coupling pin was upon appellee. He discharged that burden by proving that appellant had the pin upon the tender the day of the accident and permitted it to remain there in such position that it was by the motion of the train cast off against him, inflicting the injuries and causing the damage involved in this controversy." The testimony of appellant's witnesses was all to the effect that the pin was not upon the tender. There were no witnesses to the injury except appellee. He testified: "I saw the Big Four coming, and I was struck with that piece there,—that pin; I saw it coming and I tried to get out of the way, but I didn't make it quite. I saw it coming off the tender, something like the center of it; of course, I didn't have time to look at it, I just had time to turn half around. I was at least ten feet from the track at the time." There was evidence that similar pins were to be found at appellant's shops at Wabash; but there is not a scintilla of evidence that the pin in question was at any time or during a second of time upon the tender except the statement of appellee that he saw it coming from about the center of the tender. The evidence shows without dispute that the tender was about three-fourths full of coal; that there was an iron flange nine inches high around the top of the body of the tender; that the distance from the top of the flange to the rails of the track was nine feet; that the

pin fell, in going from the flange of the tender to the person of appellee, a vertical distance of about eight feet; that the outer edge of the tender extended over the track about two feet; that the train was running about forty-two miles per hour on a two degree curve; that appellee was on the convex side of the curve. The jury also heard expert testimony as to the physical laws of motion.

No propulsion of the pin, except by the movement of the train, was pleaded. There was no evidence of an unusual or improper condition of the track or train, or of an unskilful handling of the engine, or of any motion of the tender except in the direction of and along the track. There was no explanation how a force could have been, or was, imparted to the pin sufficient to carry it over eight feet laterally while falling eight feet vertically; but there was the testimony of appellee only to the fact that the pin did come from the tender to that distance.

Does the rule *res ipsa loquitur* apply to this case? Does the accident itself bespeak the wrong of the appellant?

Actions in tort, to recover for injury to person or property, are divisible, according to the intent of the doer of the injury, into those based upon (1) wilfulness and (2) negligence. The latter class is subdivisible, according to the relative rights and duties of the doer and of the sufferer of the injury, into (1) cases in which the doer owes the sufferer a higher duty in relation to the causal act or omission than the sufferer owes the doer, that is, the doer is under a special absolute duty (which is not reciprocal) imposed by positive law or arising from the contract relation between the parties; and (2) cases in which the rights and duties of the doer and sufferer are coördinate and complementary. Pollock's Torts 19; *Wabash, etc., R. Co.* v. *Locke*, 112 Ind. 404. In cases within the latter subdivision, the parties are strangers—they stand at arm's length; each has the right to go about his own business, expecting the other to use due foresight not to injure him; each owes the other the duty of exercising due care

to avoid injuring or being injured.   If an action is based upon the breach of this duty, the plaintiff must aver and prove that the causal act or omission was one which a reasonably prudent person, in the defendant's place, would have foreseen might cause injury.

The present case is within this latter class.   Appellee was upon the right of way of the Baltimore Company, under his employment by that company.   Appellant had been running its trains over the Baltimore Company's track for a year before the accident, to appellee's knowledge.   The parties were strangers.   The relation between them was the same as if. appellant had been on its own right of way and appellee upon a highway crossing.

The pin fell eight feet vertically in about one-fourth of a second.   The train, at forty-two miles an hour, traversed in one-fourth of a second about fifteen feet.   If the pin, when it fell from the tender had been affected only by the forces of gravity and the forward movement of the train, it would have traveled fifteen feet forward in line with the train while falling eight feet by gravitation.   On the two degree curve, the track, at fifteen feet from the point of departure, was distant from the tangent about three inches.   The pin's path of projection was the resultant of the forces applied.   The three forces that have been mentioned could not have caused the pin to fly a distance of ten feet and more laterally from the track,—more than eight feet from the outer edge of the tender.   Such a movement could only have resulted from the application of an additional force,—one sufficient to throw the pin, at right angles to the track, eight feet in one-fourth of a second.   For the train to have furnished that force, it must have had a lateral velocity (and the consequent momentum) of more than thirty feet a second, more than twenty-one miles an hour, more than half its forward velocity and momentum.   As to the cause of the pin's lateral motion, so far as this evidence is concerned, the train might as well have been standing still.   The complaint attributes the fact that

the pin was thrown more than ten feet laterally from the track entirely to the movement of the train. The evidence, disclosing nothing but appellant's train running properly on a smooth track of two degree curve and the unexplained lateral projection of the pin to a point more than ten feet from the track at a velocity greater than half that of the train's forward movement, does not support the complaint. A reasonably prudent person, in appellant's place, would not have apprehended such action of an inert iron pin under the conditions exhibited by this evidence.

Furthermore, the evidence does not disclose that the pin was on the tender in a position from which a reasonably prudent person would anticipate that it might be thrown at all by the movement of the train; nor does it show that, if the pin were in a dangerous place, appellant knew or by the exercise of reasonable diligence might have known of it in time to have obviated the risk.

In the class of cases to which this belongs, wherein the gist of the action lies in the failure of the defendant to exercise reasonable care, the maxim *res ipsa loquitur* can be allowed no broader scope than this: If the evidence which shows the injury discloses in itself that the defendant in relation to the causal act or omission did not exercise that degree of care which the law requires, the plaintiff has discharged the burden of proving negligence; otherwise not. *Wabash, etc., R. Co.* v. *Locke*, 112 Ind. 404; *City of Warsaw* v. *Dunlap*, 112 Ind. 576; *Terre Haute, etc., R. Co.* v. *Clem*, 123 Ind. 15, 7 L. R. A. 588; *Evansville, etc., R. Co.* v. *Krapf*, 143 Ind. 647, 659; *Standard Oil Co.* v. *Helmick*, 148 Ind. 457, 466; *Schultz* v. *Chicago, etc., R. Co.*, 67 Wis. 616, 31 N. W. 321; *McGowan* v. *Chicago, etc., R. Co.*, 91 Wis. 147, 64 N. W. 891; *Case* v. *Chicago, etc., R. Co.*, 64 Iowa 762, 21 N. W. 30; *Quincy Mining Co.* v. *Kitts*, 42 Mich. 34, 3 N. W. 240; *Cosulich* v. *Standard Oil Co.*, 122

N. Y. 118, 25 N. E. 259; *Pierce* v. *Kyle*, 80 Fed. 865, 26 C. C. A. 201; 2 Jaggard Torts 938; *Millie* v. *Manhattan R. Co.*, 25 N. Y. Supp. 753.

The cases cited by appellee, in which the maxim is discussed, are in conformity with this conclusion. Without discussing them in detail, it may be said that in each case the evidence of the circumstances under which the plaintiff was injured disclosed a violation of a duty owing by defendant to plaintiff under those circumstances. *Kearney* v. *London, etc., R. Co.*, L. R. 5, Q. B. 411; *Byrne* v. *Boadle*, 2 H. & C. 722; *Gleeson* v. *Virginia, etc., R. Co.*, 140 U. S. 435; 11 Sup. Ct. 859; *Morris* v. *Strobel*, 30 N. Y. Supp. 571; *Lowery* v. *Manhattan R. Co.*, 99 N. Y. 158, 1 N. E. 608; *Howser* v. *Cumberland, etc., R. Co.*, 80 Md. 146, 30 Atl. 906, 27 L. R. A. 154; *Maher* v. *Manhattan R. Co.*, 6. N. Y. Supp. 309; *Doyle* v. *Chicago, etc., R. Co.*, 77 Iowa 607, 42 N. W. 555; *Cummings* v. *Furnace Co.*, 60 Wis. 603, 18 N. W. 742, 20 N. W. 665; *Volkmar* v. *Manhattan R. Co.*, 134 N. Y. 418, 31 N. E. 870; *Davis* v. *Ferris*, 53 N. Y. Supp. 571; *Thomas* v. *Jensen*, 86 Fed. 658, 30 C. C. A. 333; *Union Pacific R. Co.* v. *Erickson*, 41 Neb. 1, 59 N. W. 347, 29 L. R. A. 137; *Grimsley* v. *Hankins*, 46 Fed. 400; *Bartnik* v. *Erie R. Co.*, 55 N. Y. Supp. 266.

*Kearney* v. *London, etc., R. Co.*, *supra*, is considered a leading case, and may be taken as illustrative of the decisions. As Kearney was passing along a highway under a railway bridge of the defendant company, a brick fell out from the top of one of the brick pilasters on which one of the girders of the bridge rested, and injured him. A train had just passed previously. On the basis that the law required the plaintiff to introduce evidence sufficient to prove that the brick was in a condition, loosened from the pillar into which it had been built, whereby it was likely to fall, by the ordinary jarring of trains, upon persons passing under the

bridge, and that the condition had continued for such a length of time that reasonable diligence in inspection would have disclosed it in time for defendant to have remedied the defect, it was held that, in the falling of the brick, considering the nature of the structure, evidence was afforded that the brick had become gradually loosened and that the defendant, if it had made a proper inspection from time to time, might have discovered its condition.

In each case, the proof must establish the existence of the defendant's negligence as charged. In this case, the evidence, as hereinbefore has been pointed out, does not sustain the complaint.

Judgment reversed, with instructions to sustain the motion for a new trial.