LEMUEL H. STEWART *vs.* PRESIDENT AND FELLOWS OF HARVARD COLLEGE.

If the owner of a building puts into it an elevator for the purpose of raising and letting down merchandise, under a contract with his tenant to furnish and operate one for that purpose, and nothing is said in respect to using it for the purpose of raising and letting down men with the merchandise, and a servant of the tenant is injured while upon the elevator with goods, through the negligence of the servant of the owner of the building in his management of the engine by which the elevator is operated, it cannot be held as a matter of law that such owner is not liable for the injury, but it should be left to the jury to determine whether it was properly incident to the business of raising and letting down merchandise that a man should go up and down with the same on the elevator.

In an action by a servant of the tenant against the owner of such building to recover for such injury, it is immaterial whether or not he knew in what way the business of raising and letting down merchandise was to be managed, or whether the elevator was constructed with a view to be used to raise or let down men, or what was the custom in that respect in using a similar elevator operated by the same engine in another store; and evidence is inadmissible to show that it was the custom in that store for a man to go up and down upon the elevator with the goods, and that the engineer employed by the defendant had done so; and no privity of contract between the plaintiff and the defendant need be shown; nor is the principle that a servant cannot recover against his master for damages sustained by reason of the negligence of a fellow-servant applicable to such a case.

The question whether a person who has received an injury from falling in such elevator was careless in omitting to observe, before stepping upon the platform, whether the engine was in operation so that the elevator could not fall, is a proper one to be submitted to the determination of the jury.

The refusal to allow a witness, who has testified to the making of a contract, to state whether or not he would have made a different one if it had been proposed to him, furnishes no ground of exception.

TORT. The declaration alleged that the defendants, being owners of several stores on Franklin Street in Boston, leased one of them to Reed, Gardner & Co.; that it was necessary in the business of said lessees to raise large quantities of goods to the upper stories of the buildings, and to lower them again; that the defendants agreed to furnish and did furnish steam power and an engineer to enable the lessees to work an elevator for raising and lowering goods therein; that the plaintiff was a servant of said lessees, and employed by them to raise and lower goods in the store, and while doing so, and using due care, the defendants' engineer worked and managed the engine so carelessly that the plaintiff was precipitated with the elevator sixty feet, into the cellar of the store, and injured.

At the trial in this court, before *Chapman*, J., it appeared that the defendants, through Mr. Lawrence, their treasurer, entered into a verbal agreement with Reed, Gardner & Co. to furnish the machinery and power for the elevator, as alleged, and to keep it in operation during certain business hours, nothing being said respecting its being used for any other purpose than to raise and lower goods. The plaintiff was employed by Reed, Gardner & Co., and superintended bringing their goods into the store, placing them in the story where they were kept, and also taking them out and sending them away. In November 1862, having occasion to send away some bales of cloth which were in the upper story, the plaintiff got upon the elevator and was raised up with another person. They placed the goods upon the elevator, and the plaintiff pulled the wire by which it was placed in a condition to be lowered. It began to descend rapidly, the machinery broke, and the elevator fell to the ground, a distance of some sixty feet, with the plaintiff upon it; and he thus received the injury complained of. This was between four and five o'clock in the afternoon.

The plaintiff introduced evidence tending to show that the engineer left his engine soon after two o'clock P. M., and was absent about two hours; that when he came back he found the crank of the engine very hot, and immediately stopped the engine without giving notice to any person ; and that if the engine had not been stopped, the machinery was so constructed that the accident would not have happened ; and he contended that the stopping of the engine, without first giving notice to those who were using the elevator, was an act of carelessness for which the defendants were liable. He also offered evidence tending to show that when the engine was stopped the machinery was so constructed that it would fall by its own weight upon the pulling of the wire, unless stopped and held by the brake hereafter mentioned, and especially if it was loaded with goods it would fall rapidly; that the servants of Reed, Gardner & Co. were in the habit of going up and down on the elevator, and that the engineer knew it; and some of the witnesses testified that they never knew the steam to be shut off without notice.

The defendants offered evidence tending to show that eleva-tors were so constructed originally that they would fall, not only upon the stopping of the engine, but upon the breaking of a cer-tain belt by which the machinery was operated; and that Messrs. Bacon & Fox were manufacturers of elevators, and invented a self-acting brake, which was set in motion by any increased speed of the machinery, and would stop it before it could fall more than a few feet. These manufacturers made the elevator used by the defendants, and carefully tested the one used by Reed, Gardner & Co., and the brake operated well when they furnished the machine. The defendants not only offered evi-dence tending to show that due care and skill were used in its construction, but that the engineer was a man of skill and faith-fulness, and acquainted with machinery, and that he had repeat-edly stopped the engine before, during business hours, without giving notice, and that no accident had happened, and that it was not necessary to give notice before stopping the engine. He had charge of all the elevators which were operated by his engine, and had charge of keeping them in repair, and visited them frequently. He testified that he had not been instructed to give notice before stopping the engine, and did not think such notice necessary. They also offered evidence tending to show that this accident happened in consequence of the breaking of a bolt in the brake, and that it appeared, when the broken bolt was found after the accident, that the iron comprising about one third of it was crystallized, showing that it had a latent imper-fection. The bolt was produced on the trial, and a model of the machinery by which the elevator was operated was exhibited to the jury.

The plaintiff offered evidence tending to show that the brake was an insufficient protection, and that it was unsafe to stop the engine without giving notice. As to the question whether it was necessary or proper for the persons in charge of the goods to go up and down upon the elevator, the evidence was contra-dictory; but there were stairs by which they might have gone up and down inside the store.

The plaintiff called Arthur Hathaway, a servant of Reed

Gardner & Co., who testified, against the defendants' objection, that in all cases, so far as he knew, a man or men went up and down upon the elevator, with the goods, in the store of Reed, Gardner & Co., and that the engineer had been up and down with men upon it.

The defendants called Amos A. Lawrence, the treasurer cf the college, who made the contract with Reed, Gardner & Co., for furnishing the machinery and power. He testified that it was a verbal contract, and he did not know that the elevator was to be used to raise men. He was asked by the defendants' counsel whether he would have made a contract to furnish power to raise or lower men. The question was objected to, and ruled to be inadmissible.

Mr. Fox, one of the manufacturers of the elevators, was called by the defendants, and was asked whether these elevators were constructed with a view to be used to raise or lower men. This question was objected to, and ruled inadmissible.

Albert T. Whiting was called by the defendants, and testified that he occupied one of the defendants' stores where one of the elevators was placed, which was worked by the engine in question. He was asked as to the custom in his store as to persons going up and down upon the elevator. This question was objected to, and ruled inadmissible. The question was also put whether, in point of fact, his elevator was used to raise and lower men. This was also excluded.

The defendants' counsel requested that the following instructions should be given to the jury:

" 1. That the defendants' treasurer having agreed to furnish such steam power to raise and let down merchandise, and nothing having been said about anything but merchandise, as matter of law, the defendants would not be liable for an injury to a servant of the lessees, who got upon the platform of the elevator to let himself down by it, although the servant of the defendants was negligent in his management of the steam-engine which furnished the power to operate the elevator.

" 2. That if the defendants' treasurer contracted with the lessees to furnish steam power to operate an elevator for raising

and lowering merchandise only, and knew nothing of the use of the elevator for the purpose of raising or lowering human beings, and never assented to such use, then the defendants would not be liable for an injury to the plaintiff, while being lowered upon the elevator, although the engineer employed by the defendants was negligent in the management of the engine, and although he knew the elevator was used by the servants of said lessees for the purpose of raising and lowering themselves.

"3. That there has been proved in this case no such privity or connection between the plaintiff and defendants as will entitle the plaintiff to recover for the want of care on the part of the engineer employed by the defendants.

"4. That, under the circumstances proved in this case, the only obligation on the part of the defendants to their lessees, or the servants of said lessees, was to use ordinary care to provide a safe elevator, and to select a competent engineer to manage the engine, furnishing the steam power to operate the elevator; and if they had so done, they would not be liable, although said engineer had been negligent, and by his negligence occasioned the injury to the plaintiff.

"5. That, the plaintiff having testified that he knew there would be nothing to hold the platform of the elevator and prevent it from descending by its own weight if the engine was not in motion, and that the machinery of the elevator at the time when he was injured was in the same room with him, in plain sight, and that he stepped upon the platform and started it, without looking to see if the steam-engine was in motion or not, such inattention and neglect to look at the machinery, as matter of law, were such want of care on his part, contributing to the accident, as to prevent him from recovering.

"6. That if the elevator was provided with means to stop the descent of its platform, if started when the steam-engine was not in motion, ordinarily sufficient for that purpose, and if the defendants' engineer believed, from his own examination and the information of others skilled in such machinery, that such means were sufficient for that purpose, and the immediate, prox-imate cause of the accident by which the plaintiff was injured

was the breaking of some part of the machinery so provided for the purpose of stopping the descent of the platform when the engine was not in motion, from some secret defect that could not be known beforehand, then the defendants would not be liable in this case for the stopping of the engine by their servant, without notice."

The judge instructed the jury that if they should find that it was not properly incident to the raising and lowering of goods that persons should go up and down on the elevator with them, then the defendants' proposition was correct. But if it was properly incident to the business that persons should go up and down with the goods on the elevator, then the proposition was not correct; that the second proposition of the defendants was correct; but, in order to lay a proper foundation for it, the fact must appear that the use of the machinery to raise and lower merchandise did not impliedly include the right of the persons having charge of the goods to accompany them up and down, as a proper act in connection with their business. He refused to adopt the third proposition, but referred the question to the jury, under instructions. The fourth he also refused to adopt. As to the fifth, he submitted the question of the plaintiff's negligence to the jury, under instructions. He adopted the sixth.

It being stated and admitted that the defendants were, under their agreement with Reed, Gardner & Co., furnishing the machinery and running it, he instructed the jury that it was necessary for the plaintiff to prove, to their reasonable satisfaction, that he was injured by the negligence of the defendants; that it was not necessary that the negligent act should be committed by a member of the corporation, but they were liable for the negligence of the person whom they had placed in charge of the steam-engine; that it was necessary for the plaintiff to prove that he was not in fault, but used reasonable care adapted to the circumstances of the case; that it must appear that his attempt to go down upon the elevator with the goods was an act properly belonging to his business; that if he was out of his proper place, he was there at his own risk; that if it was proper for him to be on the elevator, it was his duty while there to

exercise due care in looking at the machinery, so that he might know whether it was in a safe condition ; that if the accident happened in consequence of any latent defect in the machinery the defendants were not liable, and that the defect described in the bolt would be such latent defect; that, in order to hold the defendants liable, it must appear that the structure and condition of the machinery were such that it would be a want of ordinary and reasonable care on the part of the engineer to stop the engine, and thus leave the machinery to act independently of the engine during the usual working hours, without first giving notice to the persons using it; and that, in determining this question, it was important that they should understand the structure and operation of the machinery.

He further instructed them that if the plaintiff used due care, and the accident was caused by stopping the engine, and this was an act of carelessness or negligence on the part of the engineer, the plaintiff, who, it was conceded, was a servant of Reed, Gardner & Co., engaged in lowering their goods, held such a relation to the defendants that he might maintain the action.

The jury found a verdict for the plaintiff, with $2700 damages ; and the case was reported for the determination of the full court.

*J. G. Abbott*, (*J. T. Morse* with him,) for the defendants. The defendants contracted to furnish a machine for the raising and lowering of goods, and did not know of its being used for any other purpose. No evidence was introduced or offered to show that it was necessary or proper for men to ride upon the platform with the goods; nor that it was a custom in the business to do so. There was therefore no evidence before the jury upon which they could find whether such course was incident to the business. The liability of the defendants depends on what they undertook to do. If they undertook to furnish a machine for goods, and it is used for men, they are not liable for an injury to the men. They entered into no such contract. The degree of care required of the defendants would be different in selecting an agent to manage a machine that was to be used to raise and lower men. If the defendants had no actual knowledge

that their machine was to be so used, and they contracted only to operate a machine for goods, and there was no general custom that such a machine for goods should be used for men, how can a jury say that it is proper that the defendants should be liable ? There is, besides, no such privity between the plaintiff and the defendants as will permit him to extend against them this contract with Reed, Gardner & Co., especially in an action of tort. See *Blodgett* v. *Boston*, 8 Allen, 237 ; *Stickney* v. *Salem*, 3 Allen, 374 ; *Richards* v. *Enfield*, 13 Gray, 344. And, in connection with this, the exclusion of Whiting's evidence deserves further consideration. The limitation added by the judge to the second instruction deprived it of its due point and force.

The fourth instruction was proper, in analogy to the doctrine of *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49 ; *Cayzer* v. *Taylor*, 10 Gray, 280. The fact that the plaintiff and the engineer were employed by different masters distinguishes this case from those only in form. They were both working in different divisions of the same general department, namely, the moving of the goods in that store. They were working in the same branch of occupation, in reality for the same persons, in connection all the time, and necessarily with each other. The plaintiff certainly took the risk of the fitness of such a co-laborer. They were working in conjunction. See the rule laid down in *Snow* v. *Housatonic Railroad*, 8 Allen, 445. The plaintiff himself was guilty of such negligence as should prevent his recovery. *Todd* v. *Old Colony Railroad*, 3 Allen, 18 ; *S. C.* 7 Allen, 207, and cases cited.

*T. H. Sweetser*, (*W. S. Gardner* with him,) for the plaintiff.

CHAPMAN, J.* The court are of opinion that the requests of the defendants' counsel for instructions were properly refused, and that the instructions given to the jury were correct. It is not necessary to discuss each of the points embraced in these requests and rulings, the argument of the defendants' counsel having been limited to a part of them. The portions not adverted to in the argument are conceded to be correct.

---

* HOAR, J. did not sit in this case.

1. The defendants contend that, as the defendants' treasurer agreed with Reed, Gardner & Co., their lessees, to furnish the elevator and steam power for the purpose of raising and letting down merchandise, and as nothing was said about anything but merchandise, as matter of law the defendants would not be liable for an injury to one of the servants of the lessees who got upon the platform of the elevator to go down upon it, although the servant of the defendants was negligent in his management of the engine.

This would be true if the servant got upon the platform without any good reason for doing so. But the contract is to be construed reasonably. The rule that a grant shall be so construed as to authorize the grantee to enjoy all that is properly incident to the principal thing granted applies to such a case, and the contract is to be construed as including not only the right to raise and lower goods, but the right to do everything which was properly incident to that business. If it were otherwise construed, the right to raise and lower the goods themselves could not be properly and reasonably enjoyed. Whether it was properly incident to the business that a man should go up and down on the platform with the goods was a question for the jury to decide upon the evidence. The case may be illustrated by a familiar example. If the defendants had agreed to furnish a suitable horse and wagon for the transportation of goods, and it proved to be unsafe for a driver who was riding upon the wagon, it would be a question of fact for the jury to determine whether the proper management of the business of transporting goods required the driver to walk beside the horse or to ride upon the wagon, and thus whether the act of riding was properly incident to this business of transporting goods.

2. Upon this construction of the contract it is immaterial whether or not the defendants' agent by whom the contract was made knew how the business of raising and lowering goods was to be managed. Whatever is properly incident to the principal thing granted or contracted for is included, whether the grantor thinks of it or not. Both parties might have been utterly ignorant of the particular methods of using the elevator; yet

the terms of their agreement included all methods that might be found by experience to be properly incident to its reasonable use.

Whether the finding of the jury was according to the evidence cannot be considered here, as the evidence is not fully reported.

3. The defendants contend that the plaintiff cannot maintain this action against them because there was no privity of contract between him and them. But no privity is necessary. Any man who is in a place where he has a right to be, and engaged in a lawful occupation, can maintain an action against a stranger who does him an injury carelessly. A traveller on a street, for example, can maintain an action against the proprietor of a lot adjoining the street, who injures him by carelessly permitting a stick of timber to fall upon him. Every man must so manage his business as not to injure another, though the other be a stranger to him. And if the injury is done by the negligence of a servant in the course of his employment, the master is liable. This subject is well discussed in *Farwell* v. *Boston & Worcester Railroad*, 4 Met. 49, cited by the defendants' counsel.

4. It is contended that both the plaintiff and the engineer were so far in the service of Reed, Gardner & Co. that the principle relating to fellow-servants, stated in the case cited, applies to this case. But the facts show that the engineer was the servant of the defendants, and the plaintiff was the servant of Reed, Gardner & Co., and that they were not in any sense fellow-servants of one employer.

5. Although it appeared that the machinery connected with the elevator was in the room where the plaintiff loaded the elevator, and could be seen by him, yet the court cannot say judicially, without a knowledge of the machinery and its situation, and a full statement of the circumstances of the case, that the plaintiff was careless in not turning his attention to the machinery and looking at it before he attempted to lower the elevator; and they are of opinion that the question was properly left to the jury.

6. The testimony of Mr. Lawrence was properly excluded. Whether he would have made a certain contract if it had been proposed to him is not relevant to the question what contract was in fact made, nor does it tend to prove any fact which actually occurred.

7. The testimony of Mr. Fox, which was offered to prove with what view elevators are constructed by their manufacturers, was also irrelevant, and was properly excluded, because the views of the manufacturers are not material or pertinent.

8. The testimony of Mr. Whiting, which was offered to prove the custom in another store as to the use of another elevator worked by the same engine, was also irrelevant, for it was not pertinent to any fact in issue; and it was properly excluded.

9. The court are of opinion, on careful consideration, that the testimony of Hathaway, who was called by the plaintiff and testified that in all cases so far as he knew a man or men went up and down upon the elevator with the goods in the store of Reed, Gardner & Co., was inadmissible, and ought to have been excluded. The point to be proved was that the plaintiff's going up and down on the platform was properly incident to the raising and lowering of goods. He might do this by explaining to the jury the machinery and its operation and the method of doing the business, and by the opinions of men skilled in the business, and by any other proper evidence. But a particular custom is not evidence to affect strangers to it, nor does the habit of the persons who used the elevator legally tend to prove that such a use is necessary or reasonable or properly incident to their business. Yet its tendency, if admitted, would be to influence the jury on this point, so that the defendants have just cause to complain that they have been injured by its admission.

*Verdict set aside, and new trial granted.*