## THE PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY *v.* HOFFMAN.

[No. 8,322.   Filed December 23, 1914.]

1. RAILROADS.—*Injuries to Persons Near Tracks.—Complaint.*—In an action by an employe of an independent contractor for the construction of a railroad bridge to recover for injuries by being struck by a piece of coal thrown from a passing train on a defective track over the bridge, a complaint alleging that such employe was injured while discharging his duties as watchman for the contractor, sufficiently shows that plaintiff was rightfully on the bridge so as to charge the railroad company with knowledge of his presence. p. 436.

2. RAILROADS.—*Injuries to Persons Near Tracks.—Liability.*—A railroad company is charged with notice of the presence of all persons who are rightfully near its tracks, and owes to them the duty of ordinary care to avoid injuring them in the operation of its trains. p. 436.

3. RAILROADS.—*Injuries to Persons Near Tracks.*—In an action by the employe of an independent railroad bridge contractor, against the railroad company for injuries by being struck by a piece of coal hurled from a passing train, a complaint which showed that plaintiff was rightfully near the tracks, and alleged that defendant, with knowledge of the facts, negligently loaded the coal high above the top of the tender without safeguards to prevent it from falling, so that it would fall and be thrown from the tender by the motion of the engine, and that so loaded defendant negligently ran the engine over a defective track at a high rate of speed, thereby causing the coal to be thrown so as to strike plaintiff, sufficiently charged negligence. p. 436.

4. MASTER AND SERVANT.—*Assumption of Risk.—Application of Rule.*—Where the doctrine of assumed risk is applicable, the person subjected to the principle is held to assume the risk incident to the enterprise, when properly equipped and conducted, as well as all risks of defects or dangers of which he has either actual or constructive knowledge, and which he understands and

appreciates, although they originate in the negligence of one who sustains to him the relation of master or other contractual relation.  p. 437.·

5.  NEGLIGENCE.—*Action.—Complaint.—Knowledge of Defects.*—A general allegation of plaintiff's want of knowledge respecting the defect and consequent danger complained of negatives both actual and constructive knowledge, and is sufficient as a matter of pleading, unless overcome by the allegation of specific facts. p. 437.

6.  RAILROADS.—*Injuries to Persons Near Tracks.—Complaint.— Sufficiency.*—In an action by the employe of a railroad bridge contractor against the railroad company for injuries by being struck by coal thrown from a passing train, a complaint charging negligence in the loading of the coal, and in the operation of the train over a defective track, and alleging that plaintiff had no knowledge of such negligent acts, was sufficient, in the absence of specific allegations to overcome such general averments, to eliminate the objection that the risk was assumed, even if the doctrine of assumed risk were applicable in such cases. p. 437.

7.  NEGLIGENCE.—*Assumption of Risk.*—The doctrine of assumed risk is confined to those negligence cases in which the relation of master and servant or other contractual relation exists, and hence is not applicable in an action by the employe of an independent railroad bridge contractor against the railroad company for injuries received while in the performance of his duties as the result of negligence in the operation of its train.  p. 438.

8.  NEGLIGENCE.—*Assumed Risk.—Incurred Risk.—Noncontractual Relations.*—In case of noncontractual relations, where one voluntarily places himself in a certain environment, or undertakes to use a certain instrumentality, with actual or constructive knowledge of the danger connected therewith, and as a consequence suffers injury, a principle similar to the doctrine of assumed risk is involved that may defeat recovery; and the hazard in such cases, not being designated by any term of universal application, is sometimes referred to as an incurred risk and at others as an assumed risk.  p. 438.

9.  NEGLIGENCE.—*Contributory Negligence.*—Where one voluntarily and knowingly places himself in a certain environment or undertakes to use a certain instrumentality, and proceeds negligently or fails to exercise care for his own safety, recovery for a consequent injury will be defeated on the principle of contributory negligence, regardless of whether the relation of the parties was contractual or otherwise.  p. 439.

10.  MASTER AND SERVANT.—*Negligence.—Assumed Risk.—Incurred Risk.—Pleading.—Burden of Proof.*—In cases involving the doc-

Pittsburgh, etc., R. Co. *v.* Hoffman—57 Ind. App. 431.

trine of assumed risk the burden is on the plaintiff to allege and prove that he did not assume the risk involved, while respecting cases involving the principle of incurred risk the burden is on the defendant; but in the latter cases facts showing that the risk was incurred may be proven under the general denial.   p. 440.

11.   TRIAL.—*Instructions.—Issues.*—An instruction in a personal injury case, though hypothetical in form, which went no further than to submit to the consideration of the jury certain facts, which if found to be true give rise to a presumption of negligence, and which included an assumption that plaintiff was where he had a right to be and was free from contributory negligence, was not objectionable on the ground that it ignored the questions of whether a duty was owing by defendant, and of whether plaintiff had assumed or incurred the risk, etc.   p. 441.

12.   NEGLIGENCE.—*Res Ipsa Loquitur.—Applicability.*—Where an accident has happened resulting in injury, and it appears that all the instrumentalities causing the accident were under the exclusive control of the defendant, and the accident was such as would ordinarily not have occurred in the exercise of due care with reference to such instrumentalities, and the duty to exercise such care was owing to plaintiff, the maxim *res ipsa loquitur* applies and proof of the circumstances of the accident and resulting injury gives rise to the presumption of negligence and places on defendant the burden of explaining the accident consistent with due care on his part.   pp. 442, 444.

13.   NEGLIGENCE.—*Res Ipsa Loquitur.—Applicability.*—The rule *res ipsa loquitur* does not dispense with the requirement that he who alleges negligence must prove it, but merely gives to the plaintiff, on proof of the accident and enough of the attending circumstances to invoke the rule, the benefit of a presumption, the aggregate effect of which is *prima facie* proof of negligence.   p. 443.

14.   NEGLIGENCE.—*Res Ipsa Loquitur.—Applicability.*—The rule *res ipsa loquitur* is not applicable where the parties are under the same measure of care to avoid inflicting or receiving an injury.   p. 446.

15.   RAILROADS.—*Injuries to Persons Near Tracks.—Negligence.—Evidence.—Sufficiency.*—In an action against a railroad company for injuries by being struck by coal thrown from a passing train, evidence showing that plaintiff, who was in the employ of an independent contractor engaged in the construction of a bridge for the company, was upon the structure engaged in the discharge of his duties as a night watchman, and showing circumstances sufficient to warrant the jury in believing that the injury was

the result of being struck by a piece of coal coming from the tender of the train, justifies the presumption that there was negligence in the loading or handling of the coal under the rule *res ipsa loquitur*, in view of the fact that the tender, engine, and coal thrown were under the exclusive control and management of defendant's agents, and, in the absence of evidence to explain away such presumption, was sufficient to sustain the verdict for plaintiff. pp. 448, 449.

16. EVIDENCE.—*Circumstantial Evidence.*—*Sufficiency.*—In a civil action, where the solution of the matter in controversy depends on circumstantial evidence, reasonable probability is the rule, and where the circumstances agree with and support the hypothesis they are adduced to prove, they are sufficient. p. 449.

From Wayne Circuit Court; *Henry C. Fox,* Judge.

Action by Otto E. Hoffman against The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Walter G. Butler* and *John L. Rupe,* for appellant.
*Shively & Shively,* for appellee.

CALDWELL, P. J.—Trial by jury, verdict for appellee for $5,000 from which $1,500 was remitted, and judgment rendered for the residue. The complaint is in two paragraphs. Error is assigned on the overruling of the demurrer to each.

The averments of the first paragraph necessary to determine its sufficiency against objections urged, are substantially as follows: January 25, 1911, appellant, in the process of double tracking its railroad, was constructing over Simmons Creek west of Dublin a concrete double arch bridge. The work consisted of such double arches and a cinder fill thereon, and was being performed by an independent contractor. The bridge on its completion was designed to support the existing track on the north and an additional track to be laid on the south. In order that traffic might not be interrupted, the south half of the bridge was built first. On said day the south half of the double arches had been completed, the fill made thereon, and a temporary track about 1,000 feet in length extending across

the south half of the work and joining the existing track at each end, was being used for the passage of trains while the old bridge supporting the existing line of road on the north was being removed, and the north half of the work constructed. In making the fill over the south half of the arches, a crib was constructed by the use of railroad ties to support the north wall of such fill while the north half of the work was being done. On said day the concrete work of the north half was nearing completion. Appellee was employed as a watchman by the independent contractor. His duties as such watchman were that he should remain on and about the bridge during the nighttime, and care for the same, and also that he should look after and keep fire in certain stationary engines, which were being used in constructing the work. It is alleged that said temporary track was crooked, uneven and not well ballasted. About 5:30 o'clock on the morning of said day, and before the arrival of the force of men engaged in said work, appellant ran a west bound passenger train over the temporary track at the rate of forty miles per hour. By reason of the condition of the track, the train did not run smoothly, but swayed and rocked. Appellant at the time was in the line and performance of his duty at a point on the north half of said arches, five to seven feet north of the temporary track, which, by reason of the fill, was seven or eight feet above him, and thereupon, while the train was being carelessly and negligently operated over the uneven track, a large lump of coal fell from the tender of the engine drawing the train, and struck appellee on the head and seriously injured him. It is alleged that appellant was guilty of negligence in loading the coal in the tender, and in operating the train at a high rate of speed over the defective track, and that as a result the lump of coal was thrown from the tender against appellee injuring him, as aforesaid. It is alleged also that appellant knew and that appellee did not know of the negligence as pleaded.

The second paragraph of complaint does not differ materially from the first. It contains additional matter that there was in force a general rule and order made by appellant that trains should not be operated over the temporary track at a speed exceeding fifteen miles per hour.

Against the sufficiency of the first paragraph of complaint it is argued that the paragraph does not disclose that appellee's duties required him to be on the incompleted bridge; that it does disclose that he was there for purposes of his own; that as a consequence, it does not appear that appellant owed appellee any duty to exercise care respecting him. It is argued also that the accident and injury resulted from dangers and risks incident to appellee's employment and known to him, which dangers and risks were therefore assumed by him.

As indicated, it is alleged in the paragraph that appellee was employed as a watchman, and that it was a part of his duty under such employment to be on and about the bridge, and to care for same during the nighttime.

1. It is specifically alleged that appellee received his injuries while discharging such duties, and it therefore sufficiently appears that appellee's duty rather than some purpose of his own accounted for his presence. He was, therefore, rightfully on the bridge. Being rightfully on the bridge, appellant was chargeable with notice of his whereabouts. *Jackson* v. *Galveston, etc., R. Co.* (1897), 90 Tex. 372, 38 S. W. 745. Appellee being rightfully near the track,

2. and appellant being chargeable with notice of his presence, because it was chargeable with notice of the presence of all persons who might be rightfully near the track, it follows that appellant owed appellee the duty to use ordinary care to avoid injuring him, and that if it failed to do so, it was thereby guilty of negligence. Such being the case, the averments contained in the paragraph—

3. that appellant, with knowledge of the facts, negligently loaded the coal by piling it up above the top

of the tender, in the absence of safeguards to prevent it from falling, and so that it would fall and be thrown from the tender by the motion of the engine, and that, as aforesaid, appellant negligently ran said loaded engine over said defective track at said high rate of speed—are sufficient as a charge of negligence. *Fletcher* v. *Baltimore, etc., R. Co.* (1897), 168 U. S. 135, 18 Sup. Ct. 35, 42 L. Ed. 411; *Gulf, etc., R. Co.* v. *Wood* (1901), 63 S. W. (Tex. Civ. App.) 164; *Cleveland, etc., R. Co.* v. *Berry* (1899), 152 Ind. 607, 616, 53 N. E. 415, 46 L. R. A. 33; 33 Cyc. 779.

In a case where the principle of assumption of risk applies, the person subjected to such principle is held to assume the risk incident to the enterprise, when properly equipped and conducted, and in addition, he assumes all risks growing out of defects or dangers of which he had either actual or constructive knowledge, and which he understands and appreciates although such additional risks have their origin in the negligence of the one who in the particular matter sustains to him the relation of master or other contractual relation. As matter of pleading in negligence cases, a general allegation of plaintiff's want of knowledge respecting the defect and consequent danger complained of is sufficient, unless specific facts disclosed by the complaint overcome such general averment. Such general allegation negatives not only actual but also constructive knowledge. *Terre Haute, etc., Traction Co.* v. *Young* (1914), 56 Ind. App. 25, 104 N. E. 780; *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290, 76 N. E. 1060.

The negligence charged here in the first paragraph of complaint is respecting the loading of the coal on the tender, and the manner of operating the engine over the defective track. It is averred that appellee had no knowledge of appellant's alleged negligent acts as averred in the paragraph, and there being no specific facts pleaded which nullify the general allegation, the paragraph

is sufficient as against the criticism now under considera-
tion, even if the element of "assumption of risk" were in-
volved in this action.  However, what is technically known
as the doctrine of the "assumption of risk" has no
7.  application to a case such as this.  Such doctrine is
confined to those negligence cases wherein the rela-
tion of master and servant or other contractual relation
exists.  There was no such relation between appellant and
appellee.  *Indiana, etc., Oil Co.* v. *O'Brien* (1903), 160 Ind.
266, 65 N. E. 918, 66 N. E. 742; *Davis Coal Co.* v. *Pollard*
(1902), 158 Ind. 607, 62 N. E. 493, 92 Am. St. 319; *Cleve-
land, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 539, 87
N. E. 723.  It may be granted that in relations other
8.  than contractual, there is applied in negligence cases
a principle very similar in its nature to the principle
of the assumption of risk, as, where one voluntarily uses
a defective bridge, street, highway or sidewalk, with actual
or constructive knowledge of its condition, and as a conse-
quence of such use, suffers an injury.  No term of universal
application is used to designate the principle involved which
in such cases may defeat the right to recover for such
injury.  The hazard encountered under such circumstances
is referred to by the courts as an incurred risk, and some-
times as an assumed risk, while the fact that one so en-
counters it is sometimes called taking the risk.  In all such
cases, application of the maxim *volenti non fit injuria,*
"that to which a person consents is not deemed in law an
injury", may defeat a .recovery.  *City of Washington* v.
*Small* (1882), 86 Ind. 462, 466; *City of Indianapolis* v.
*Cook* (1884), 99 Ind. 10, 13; *Bruker* v. *Town of Covington*
(1879), 69 Ind. 33, 35 Am. Rep. 202; *Town of Salem* v.
*Walker* (1897), 16 Ind. App. 687, 692, 46 N. E. 90; *Town
of Gosport* v. *Evans* (1887), 112 Ind. 133, 13 N. E. 256, 2
Am. St. 164.  Persons being transported on freight and
stock cars are also said to assume the risk of so doing (*Ohio,
etc., R. Co.* v. *Watson* [1893], 19 L. R. A. 310, note) ; or

by occupying improper places on street cars (*Burns* v. *Johnstown, etc., R. Co.* [1905], 2 L. R. A. (N. S.) 1191, note) ; or by alighting from a moving car (*Jagger* v. *Peoples St. R. Co.* [1897], 38 L. R. A. 786, note). A like term is used to characterize conduct in certain other relations. *Wells* v. *Minneapolis Baseball, etc., Co.* (1913), 122 Minn. 327, 142 N. W. 706, 46 L. R. A. (N. S.) 606; *Muldoon* v. *Seattle, etc., R. Co.* (1894), 10 Wash. 311, 38 Pac. 995, 45 Am. St. 787, 22 L. R. A. 794. It will be observed, however, that in such cases, the conduct of the person involved is frequently characterized as contributory negligence. As indicated, the principle of assumption of risk is not involved in this action. The principle of incurred risk and also of contributory negligence may be involved. The three principles are distinguishable in this: Where one voluntarily and knowingly places himself in a certain environment, or undertakes to use a certain instrumentality, and as a consequence receives an injury, his right to recover therefor may be defeated by the doctrine of the assumption of risk, where the contractual relation exists, or by the doctrine of incurred risk where the relation is noncontractual, even though he may have exercised due care for his own safety in the midst of such environment or in the actual use of such instrumentality. In the midst of such environment or in the actual use of such instrumentality, he may have proceeded negligently or omitted to exercise care for his own safety, and if as a consequence he suffers an injury the principle of contributory negligence would defeat his right to recover therefor. When either of the first two principles defeats an action brought to recover for an injury, it is because of the situation that the person involved voluntarily and knowingly assumes. Contributory negligence defeats him by reason of careless conduct in a given situation. See *Davis Coal Co.* v. *Pollard, supra; Indiana, etc., Oil Co.* v. *O'Brien, supra; Town of Salem* v. *Walker, supra; Town of Gosport* v. *Evans, supra;*

*Coley* v. *North Carolina R. Co.* (1901); 128 N. C. 534, 39 S. E. 43, 57 L. R. A. 817; *Coley* v. *North Carolina R. Co.* (1901), 129 N. C. 407, 40 S. E. 195; Shearman & Redfield, Negligence (6th ed.) §114a.

We have indicated that in cases involving the principle of assumption of risk, as herein distinguished, the burden is on the plaintiff suing to recover for injuries, both to allege by appropriate averments, and also to prove that he did not assume the risk involved. A different rule obtains, however, respecting incurred risks. As to these, the burden of pleading and proof is on the defendant. Facts showing that the risk was incurred may be proven, however, under the general denial. *Indiana, etc., Oil Co.* v. *O'Brien, supra.* It follows that the first paragraph of the complaint is not subject to the criticism now under consideration, and also that the court did not err in overruling a demurrer to such first paragraph. As the second paragraph is substantially the same as the first, our conclusion is the same as to the ruling on the demurrer to such paragraph.

Appellant's principal point of contention is whether the court properly applied to the facts and circumstances of this case the maxim *res ipsa loquitur*, "the thing itself speaks". This contention arises from instruction No. 13 given by the court on its own motion, and from the refusal of instruction No. 10 requested by appellant. Instruction No. 13, in so far as it is criticized, is as follows: "If you believe from the preponderance of the evidence of this case that on the 25th day of January, 1911, the defendant was having a bridge constructed on its line of railway near Dublin in this county, and that the work was being done by a contractor, who had contracted with the defendant to build and complete said bridge, and that while said bridge was being constructed, the defendant was running its trains over said bridge; that at the time aforesaid the plaintiff was in the employ of said contractor, and not the defend-

Pittsburgh, etc., R. Co. *v.* Hoffman—57 Ind. App. 431.

ant; that in the morning of said day the defendant was by its servants and employes running a locomotive and train of cars over said bridge; that at the time the plaintiff was where he had a lawful right to be, and was without any fault or negligence in the premises; that while said locomotive and train of cars was passing over said bridge in the possession of and under the control of defendant's servants and employes, a lump of coal fell from said locomotive and struck the plaintiff, without any notice or warning to him, knocking him down and injuring him'' that in substance such facts give rise to a presumption of negligence against appellant, which presumption it is called on to meet. Instruction No. 10, requested by appellant and refused by the court is to the effect that this case does not belong in that class of cases wherein proof of the facts showing the accident gives rise to the presumption of negligence; that in this case, there is no presumption of negligence; that to be entitled to a verdict, appellee must prove the negligence as charged.

We shall first consider what may be called the minor or secondary objections urged against instruction No. 13. These minor objections are that said instruction 11. ignores each of the following elements: The question of whether appellant owed appellee any duty, the question of the relation of the parties respecting their mutual duty to exercise care, the question of assumption of risk, and the question of appellee having voluntarily placed himself in danger. These minor objections might be disposed of by calling attention to the fact that although the instruction is hypothetical in form, the question submitted thereby is not the ultimate one of the right to a verdict. It goes no further than to submit to the consideration of the jury certain facts, which if found to be true, give rise to a presumption of negligence. However, if appellee was where he had a lawful right to be, then, as already indicated, appellant was chargeable with notice of his presence. As

a consequence, appellant owed appellee the duty to exercise reasonable care in the conduct of its business to avoid injuring him.    *Jackson* v. *Galveston, etc., R. Co., supra; Fletcher* v. *Baltimore, etc., R. Co., supra; Pittsburgh, etc., R. Co.* v. *Warrum* (1908), 42 Ind. App. 179, 184, 82 N. E. 934, 84 N. E. 356; *Cleveland, etc., R. Co.* v. *Berry* (1899), 46 L. R. A. 33, note.  Granting that it was appellee's duty also to exercise reasonable care for his own safety, this element is provided for in that the instruction assumes hypothetically that appellee was where he had a lawful right to be, and that he was free from contributory fault.  If he was so situated, and so conducted himself, the element of incurred risk also, as a potent factor against appellee, was excluded.

Considering next the major objection urged against said instruction, under the facts submitted, Is the maxim *res ipsa loquitur* applicable?  Appellant, by counsel states its position thus:  "The rule of negligence presumed from the•happening of the event causing injury, has its foundation in the contract relation between carrier and passenger, or with respect to injuries to persons lawfully using a public highway from something permitted on premises adjoining the highway. In the first class of cases, the carrier is substantially an insurer of the safe passage of the passenger, and in the other, there is a special duty of the property owner to avoid injury to persons on the highway. In no case is the rule applied where there is no contract relation or specific duty imposed, and where the parties are under the same measure of care to avoid inflicting or receiving injury."  The maxim is applied to many relations aside from those indicated by appellant.  The rule is thus stated by this court:  "Where an accident happens resulting in the injury to a person or his property, and it is made to appear that all the instrumentalities causing the accident are under the exclusive control and management of the defendant, and the accident is such as ordinarily would not

occur if due care was exercised by those who have control of such instrumentalities, and the duty to exercise such care is owing the plaintiff from the defendant, then proof of the circumstances of the accident and injury resulting therefrom casts on the defendant the presumption of negligence and the burden of explaining the accident consistent with due care on his part." *Knoefel* v. *Atkins* (1907), 40 Ind. App. 428, 436, 81 N. E. 600. See, also, *Snyder* v. *Wheeling Elec. Co.* (1897), 43 W. Va. 661, 28 S. E. 733, 64 Am. St. 922, 39 L. R. A. 499. The first case cited reviews the authorities and applies the maxim to a situation wherein a customer called on a druggist for a harmless remedy, and was supplied with a poisonous substance instead. For application of the maxim to various situations wherein persons lawfully using sidewalks, streets and other public highways receive injuries from coal holes, trap doors, falling walls and structures and falling articles of various kinds, explosions, derailment of cars, etc., see note to *Corbin* v. *Benton* (1912), 43 L. R. A. (N. S.) 591. For cases involving the falling of objects from elevated railroads, see note to *Carney* v. *Boston, etc., Railway* (1912), 42 L. R. A. (N. S.) 90. For cases wherein persons lawfully on the premises of other persons receive injuries through instrumentalities under the control of such other persons, see note to *Barnowski* v. *Helson* (1891), 15 L. R. A. 34. See also cases collected in note to *Stearns* v. *Ontario Spinning Co.* (1898), 3 Am. Neg. Rep. 485.

It should be kept in mind that the rule *res ipsa loquitur* is not resorted to for the purpose of creating negligence. It is not so potent as to convert into a negligent act 13. that which is otherwise due care. It does not dispense with the rule that he who alleges negligence must prove it. It is in certain cases simply a step in the process by which negligence may be proven. *Lyles* v. *Brannon, etc., Co.* (1905), 140 N. C. 25, 52 S. E. 233. It merely permits plaintiff to place in the scales along with the proof

of the accident and enough of the attending circumstances to invoke the rule, a presumption, the aggregate effect of which is *prima facie* proof of negligence. *Kay* v. *Metropolitan St. R. Co.* (1909), 163 N. Y. 447, 57 N. E. 751; *Christensen* v. *Oregon, etc., R. Co.* (1909), 35 Utah 137, 99 Pac. 676, 20 L. R. A. (N. S.) 255, 18 Ann. Cas. 1159.

While the rule has been more frequently applied in cases involving the relation of carrier and passenger, than other relations, yet neither reason nor authority justifies its limitation to such relation and to relations existing between persons lawfully on a public highway, and the owner of adjacent property. The application of the rule originates from the nature of the act done, rather than from the relation existing between the parties to such act. *McCray* v. *Galveston, etc., R. Co.* (1896), 89 Tex. 168, 34 S. W. 95. It would, therefore, seem that where the necessary facts appear as where the person charged has exclusive control of the instrumentality by which the injury is inflicted, etc., the rule may be invoked in negligence cases, under some circumstances, where any one of a number of relations so exists, as where the relation is that of carrier and passenger, master and servant, customer and merchant as in *Knoefel* v. *Atkins, supra,* or where the parties stand in no particular relation to each other, as where one is in a place where he has a lawful right to be, engaged in a lawful occupation or pursuit, and is injured through the negligent conduct of another. For example, where a traveler on a street is injured through the careless act of an adjoining proprietor, in negligently permitting some article to fall on him. *Stewart* v. *Harvard College* (1866), 94 Mass. 58, 67. Of course, it is probably true that in some relations, proof of fewer circumstances than in other relations may be sufficient to invoke the rule. In the well considered case of *Cincinnati, etc., R. Co.* v. *South Fork Coal Co.* (1905), 139 Fed. 528, 534, 71 C. C. A. 316, 1 L. R. A. (N. S.) 533, the court said: "In each action for a tortious injury the ques-

tion as to what evidence will make a *prima facie* case of
negligence and require an explanation from the defendant
will depend upon the nature and circumstances of the in-
jury and the measure of care due from the defendant.''
That it is the nature of the thing done, rather than the re-
lation between the parties, that calls for the application of
the maxim, appears in that the rule is not always applied
where the relation of carrier and passenger exists, as where
a passenger in departing from a coach of a standing train
placed his hand on the door jamb and was injured by the
coach door slamming against it.   In such case the court re-
fused to apply the maxim, for the reason that the instru-
mentality that caused the injury was not exclusively under
the control of the defendant and its servants; that such
doors were frequently opened and closed by other persons.
*Christensen* v. *Oregon, etc., R. Co., supra.*   In that case the
rule is announced that in order that an injured passenger
may invoke the maxim, it must appear that the injury was
occasioned by a collision, derailment or upsetting of coaches,
breaking of machinery or appliances, or in the management
of the instrumentality or means used in the business over
which the carrier has control, and for the conduct and man-
agement of which he is responsible.   It would, therefore, seem
that where it appears that the instrumentality that caused
the injury is under the exclusive control and management of
the defendant or its servants, and it plainly appears that
the accident is such as in the ordinary course of things does
not happen, if those who have such control and management
use proper care, there being a duty to exercise such care, the
maxim *res ipsa loquitur* may be invoked.   It was applied in
*Gulf, etc., R. Co.* v. *Wood* (1901), 63 S. W. (Tex. Civ. App.)
164, where a lump of coal fell from the tender of a passing
train, and injured a section hand, who was standing five or
six feet from the track; and in *Houser* v. *Cumberland, etc.,
R. Co.* (1894), 80 Md. 146, 30 Atl. 906, 45 Am. St. 332, 27
L. R. A. 154, where one lawfully walking along a footpath

near the right of way was injured by crossties falling from a passing car; and in *Memphis, etc., Packet Co.* v. *McCool* (1882), 83 Ind. 393, 43 Am. Rep. 71, where a passenger on a steamboat was injured by the act of a servant of defendant in permitting a bale of cotton to fall on him; and in *Louisville, etc., R. Co.* v. *Reynolds* (1903), 71 S. W. (Ky.) 517, where a person lawfully standing near a railway depot was injured under circumstances similar to those in *Gulf, etc., R. Co.* v. *Wood, supra;* and in *McCray* v. *Galveston, etc., R. Co., supra,* where a brakeman was injured by a steel rail falling from a freight car, and being thrown against him by the motion of the train, while he was sitting on a rear car. See, also, *Doyle* v. *Chicago, etc., R. Co.* (1889), 77 Iowa 607, 42 N. W. 555, 4 L. R. A. 420, where a coupling pin was hurled by the wheels of a car passing over a bridge, striking a workman on said bridge, who was standing near, it appearing that the pin was not on the bridge prior to the passing of the train; and also *Union Pac. R. Co.* v. *Erickson* (1894), 41 Neb. 1, 59 N. W. 347, 29 L. R. A. 137, where the circumstances were similar to those in *Gulf, etc., R. Co.* v. *Wood, supra.*

The scope of the rule that *res ipsa loquitur* does not apply where the parties are under the same measure of care to avoid inflicting or receiving injury, is illustrated by the following cases. In *Sauer* v. *Eagle Brewing Co.* (1906), 3 Cal. App. 127, 84 Pac. 425, plaintiff was injured by a vehicle, which he was driving, colliding with a vehicle which defendant was driving. There the rights of the parties on the streets were identical and the duty resting upon one to avoid the collision was of the same weight as that resting upon the other. The instrumentality that caused the injury included the two vehicles, one of which was under the exclusive control of the injured party. It was properly held that the rule did not apply. In *Dentz* v. *Pennsylvania R. Co.* (1908), 75 N. J. L. 893, 70 Atl. 164, a tug towing a lighter in entering a harbor collided with a

vessel anchored in a slip of the harbor. The court said that from these facts alone a presumption of negligence arose. It will be observed that in that case, considering said facts alone, defendant had exclusive control of the agency that caused the collision. However, under all the facts disclosed by plaintiff's evidence, the court refused to apply the rule. In our judgment, the trial court in the case at bar properly applied the maxim, and as a consequence there was no error in giving instruction No. 13, and in refusing instruction No. 10.

Our attention is called to *Schultz* v. *Chicago, etc., R. Co.* (1887), 67 Wis. 616, 31 N. W. 321, 58 Am. Rep. 881. In that case, appellant, while engaged in appellee's service as a track walker was injured by a lump of coal that fell from a passing engine. Appellant, as a witness, testified that the coal was heaped above the top of the tender, and that he knew that as a general rule tenders were so loaded, and that coal sometimes fell from them. At the close of appellant's evidence, the court directed a nonsuit. On appeal the judgment was affirmed, the court assigning among others, two reasons, neither of which is applicable here, to-wit, (1) the relation of master and servant existing, appellant, under his own evidence was shown to have assumed the risk; and (2) any negligence that may have existed was the negligence of a fellow servant. We can not bring ourselves to agree with some further discussion in the case on the subject of negligence, and to the effect that the occurrence came within the realm of purely accidental. The case is both criticized and distinguished in *Union Pac. R. Co.* v. *Erickson, supra,* 10, as follows: "Portions of that decision are open to criticism; but on the question of negligence we do not think that the conclusion was wrong, or that it conflicts with that we reach. All that the court there held was that the facts established did not make out a case of negligence in law."

Questions are raised respecting certain other instructions

given and refused. We do not feel that we should be warranted in discussing such instructions and questions in detail. The jury was fully and fairly instructed.

The sufficiency of the evidence is challenged. In descriptive matter the evidence follows the complaint. There was other evidence that appellee, as an employe of said contractor, had been engaged at said work for several months. A few days before the accident, he was assigned to nightwork at the bridge, his duties being "to keep things from freezing, watch the boilers and look after things" to keep fire in three engines, one of which was west of the bridge on the grade, and two east of the bridge, one on the grade and one in the valley below. He was expected to look after things and see that nothing was carried away, and to have everything ready for work when the workmen came in the morning. His duties required him to visit both sides of the bridge. On this particular occasion, he had been west a short distance at a temporary telegraph office. As he returned, he fixed up the fire under the boiler west of the bridge, and then passed down on to the north part of said arches, and there gathered up some pieces of boards to use in kindling the fire under the east boilers. He carried such pieces of boards south along the valley where the two arches joined, and was engaged in breaking up said boards, by striking them against said crib, when the train approached. He was not thinking of the train, and could not and did not see it or have knowledge of its presence until it was practically south of him. The track there was seven or eight feet above and several feet south of him. Just as the tender of the engine was about opposite him, he looked up and saw a missile coming towards his face from the direction of the tender. The workmen, when they arrived, found appellee in a semiconscious condition, lying on the arches. His face and head were cut and covered with dry blood and coal dust. Near him were pieces of coal and slate, some of them marked with blood. This coal was of a different kind and

quality from that used in the engines at the bridge. There was no coal on or in the valley of the arches the evening before or when appellee walked south with the pieces of board. The crew of the engine drawing said train consisted of an engineer and fireman, the former only testifying. His evidence was to the effect that the speed of the train on said temporary track was from twelve to fifteen miles per hour; that the tender had a water tank at the rear, and extending around the sides of the coal pit; that all around the outside of the water space was a perpendicular flange eight to ten inches high; that the top of the tank for about twelve feet from the rear was level; that along the sides of the pit the water tank was about eighteen inches thick; that along the outside of this water space was said flange; the space for coal consisted of the pit, and the top of the tank; the rear wall of the pit sloped, the other walls being perpendicular. The coal capacity of the tender was 27,000 pounds, and that it was full and heaped up somewhat at Columbus where it was loaded; that there were generally eight to ten thousand pounds left at Dublin. He gave it as his opinion that the coal was all down in the pit at Dublin; that it was not his business to watch the coal, and that he did not do so. The trial was had in November, 1911. The engineer first learned on the day before he testified that some person had been injured at said bridge January 25, previous thereto.

It appears that the evidence tending to show that appellee was struck by a piece of coal, and that it came from said tender, was in part circumstantial. In our judgment, 16. it was sufficient to justify the jury in so believing. Where, in a civil suit, the solution of a problem in controversy depends on circumstantial evidence, if 15. the circumstances agree with and support the hypothesis, they are adduced to prove, the circumstances are sufficient to that end. In such cases, reasonable probability is the rule. *Indianapolis, etc., R. Co.* v. *Colling-*

*wood* (1880), 71 Ind. 476. *Knoefel* v. *Atkins, supra,* 433. Considered as a matter of mere circumstantial evidence, however, the evidence is not sufficient to prove the negligence charged. Appellee was struck by a piece of coal, and the jury, as we have said, was warranted in finding that such coal came from the tender, but there is no circumstance proven, which as mere matter of circumstantial evidence, connects the fact of the falling of the coal with any human agency. But the tender and the engine and the coal thrown, and the handling and management of all these, were under the exclusive control of appellant's servants. We do not believe that coal properly and carefully loaded on an engine properly handled, keeping in view the nature of the track, would ordinarily fall from such tender upon persons near the track. It is in such a situation that the maxim *res ipsa loquitur* supplements circumstantial evidence, by raising a presumption from such facts unexplained that there was negligence in the loading or handling of the coal. In this case, as indicated, there was no satisfactory explanatory evidence as to how the coal was loaded or in what condition it was. The engineer apparently had no knowledge of the situation, except speculative. *Gulf, etc., R. Co.* v. *Wood, supra; Louisville, etc., Traction Co.* v. *Worrell* (1909), 44 Ind. App. 480, 489, 86 N. E. 78; *Doyle* v. *Chicago, etc., R. Co., supra; Cincinnati Traction Co.* v. *Holzenkamp* (1906), 74 Ohio St. 379, 78 N. E. 529, 113 Am. St. 980, 6 L. R. A. (N. S.) 800; *Fitzgerald* v. *Southern R. Co.* (1906), 6 L. R. A. (N. S.) 337, note.

Our attention is called to *Cleveland, etc., R. Co.* v. *Berry, supra.* In that case the judgment was reversed for insufficiency of evidence. It appeared that the appellant was using the track of the Baltimore and Ohio Southwestern Railway Company. Appellee was car inspector for the latter company. There was evidence that while appellee was in the line of his duty, standing near the track, he observed a coupling pin coming from the tender of appellant's train,

which was passing, and which pin struck and injured him. The train crew denied that the pin was on the tender, but on the assumption that it was there, the court held that under the allegations and proof there were but three forces that could have acted on it. The momentum imparted by the onward movement of the train over a smooth track; centrifugal force from the movement of the train around a slight curve, and gravity after the pin was dislodged from the tender; and that to assert that said pin, influenced by said forces alone and in the absence of a fourth force, as to which there was neither allegation nor proof, traveled the distance and direction claimed, is contrary to physical laws. We do not understand that by said decision the court held that the maxim *res ipsa loquitur* could not be applied to such a case, but rather, giving to such maxim the full force to which it is entitled, in such a case, there was still an insufficiency of evidence. Such is practically the construction placed on the decision by *Louisville, etc., R. Co.* v. *Reynolds, supra.*

In our judgment, there was evidence to sustain the verdict in the case at bar. There being no prejudicial error called to our attention, the judgment is affirmed.

NOTE.—Reported in 107 N. E. 315. As to when employe of a railroad company is charged with knowledge of the condition of the road, see 47 Am. Rep. 430. As to liability of a railroad for personal injuries from negligent operation of trains to person on adjoining property or highway, see 31 L. R. A. (N. S.) 980. As to servant's assumption of risk in the absence of contractual relation, see 3 L. R. A. (N. S.) 1097. As to the applicability of the rule of *res ipsa loquitur* in the absence of contractual relations, see 6 L. R. A. (N. S.) 800. As to relation of the doctrine of *res ipsa loquitur* to burden of proof, see 16 L. R. A. (N. S.) 527. As to liability of a railroad company for personal injuries caused by objects thrown or falling from train, see 13 Ann. Cas. 77. See, also, under (1, 3) 33 Cyc. 865; (2) 33 Cyc. 1145, 765; (4) 26 Cyc. 1177, 1225; (5) 29 Cyc. 577, 578; (6) 33 Cyc. 865; 26 Cyc. 1397; (7) 26 Cyc. 1177; (8) 29 Cyc. 518; (9) 29 Cyc. 507; (10) 26 Cyc. 1397, 1399, 1403; (11) 38 Cyc. 1632; (12, 13, 14) 29 Cyc. 590; (15) 33 Cyc. 891; 29 Cyc. 593; (16) 17 Cyc. 817.