ORVILLE E. FARMER *v.* WERNER TRANSPORTATION COMPANY.

[No. 272A88.  Filed June 29, 1972.]

*Ronald V. Aungst, Lyons, Aungst & Guastella,* of Valparaiso, for appellant.

*Patrick J. Dougherty, Spangler, Jennings, Spangler & Dougherty,* of Gary, for appellee.

SHARP, J.—This case grew out of a collision which occurred on February 24, 1968, near the intersection Indiana Route 49 and Indiana Route 130 in Porter County, Indiana. The Plaintiff-Appellant, Orville E. Farmer, alleges in his complaint that an object fell from a truck owned by the Defendant-Appellee, Werner Transportation Company, and that his truck struck an object which had fallen from the truck of the Defendant-Appellee. It also alleges that the facts connected with the object appearing on said highway are unknown to the Appellant and are known to the Appellee, Werner Transportation Company. The complaint further alleges that the Plaintiff-Appellant sustained damages to his vehicle in excess of $10,000.00 and sustained personal injuries. The complaint was answered in general denial and further asserted the defense of contributory negligence.

The evidence shows that on the 24th of February, 1968, Plaintiff-Appellant was operating a tractor trailer truck proceeding generally from Fort Wayne, Indiana, to Chicago, Illinois. In the vicinity of Warsaw, Indiana, the Appellant followed another tractor trailer truck. Both drivers stopped at the same time at a truck stop near the intersection of Highway 49 and United States Highway 30. At that truck stop the Appellant testifies as follows:

"Q. Now, at this time when you were standing in the door of the diner, were you at that time able to determine or distinguish the markings?
A. That is when I seen the Werner, that is all I could make out, the Werner."

The two drivers had breakfast together for approximately fifteen minutes at the truck stop when the driver of the "Werner" truck asked the Appellant to follow him and "I'll show you a short route". The trucks then proceeded on United States Highway 30 to Indiana Highway 49 through Valparaiso. During all of this time the truck operated by the Appellant was following the "Werner" truck. At the inter-

section of Indiana Highway 49 and Indiana Highway 130 both trucks proceeded in a westerly direction on Highway 130, still approximately one or two blocks apart.

On Direct Examination the Appellant testified as follows:

"Q. All right, can you indicate to the jury exactly what happened?

A. I remember we was going up a grade. I was watching, I could see his lights. The back of the truck was dirty, but I could see his lights good. But I was in his footsteps. I am empty.

\* \* \*

Q. Do you recall where the unit was that you have indicated in relation to the median strip of 130?

A. It was approximately about a foot on my side of the center strip.

Q. Do you have any idea how far you were from that object when you first saw it?

A. I imagine anywhere between ten and 15 feet.

Q. Were you able to determine at that time any color?

A. Any what?

Q. Could you tell what the color of the object was?

A. No, the road was black and the object was black, that is why I didn't see it until I got right upon it.

\* \* \*

Q. All right, now, I believe that you indicated that your vehicle came into contact with this object that was located on 130, is that correct?

A. That's right.

Q. All right, as best you can recall just before you had contact with that object, do you know how far you were behind that Werner truck that was ahead of you?

A. I would say about a block or a block and a half.

\* \* \*

Q. At any time was there any vehicle that got in between your truck and the Werner truck from the time you left until the incident on 130?

A. No, no."

William Kibble, who operates a towing service in Valparaiso, Indiana, testified that he was at the scene of the acci-

dent in question in the early morning hours of February 24, 1968, in part as follows:

"Q. Was there anything else you removed from the scene of the accident other than the tractor and trailer?

A. Yes, sir. There was some refrigeration unit or compressor, something to that affect, laying along side of the highway.

Q. How many units were there?

A. Two larger ones.

Q. Can you describe approximately how large they were?

A. Well, I wouldn't know the weight, but I know we had to use the winch-truck to lift them, and that is the way we taken them back to the garage.

Q. I see.

A. And onto a truck.

Q. After you removed the two compressor units back to your garage what if anything did you do with those units then?

A. Stored them there at the garage.

Q. Can you indicate how long they remained in storage at your garage?

A. No, sir, I can't tell you exactly how long they were there. I think I have the receipt for them, but I can't tell you the date on them.

Q. Do you still have those compressor units?

A. No, sir.

Q. What happened to them?

A. Werner Transportation and Truck Line out of Chicago picked those two units up.

Q. And did the individual who picked those units up identify himself at this time?

A. That he was Werner, a representative of Werner Transportation.

Q. And were those units then removed from your garage?

A. Yes, sir, they were released to Werner."

On cross-examination Mr. Kibble testified in part as follows:

"Q. You said you found these units, you said they were on the side of the road?

A. One, if I remember correctly, was laying on the westbound lane on the pavement. The other one was on the south side of US 130, I believe, off of the pavement.

Q. Where were they with relation to each other?

A. Almost opposite of one another.

Q. And where did you observe it in the westbound lane?

A. Where?

Q. With relation to the center line, for instance?

A. Oh, I would say ten, approximately ten feet.

Q. Ten feet?

A. From the center line.

Q. From the center line toward the north?

A. I suppose, I won't say for sure.

Q. You suppose toward the north?

A. Yes.

Q. So if it is 12 feet wide, the traveled portion, you are saying it is two feet inside the westbound lane from the north?"

The only evidence which the Appellant offered at trial was his own testimony, the testimony of William Kibble and a deposition of Dr. William H. Allen. (Except for said deposition Appellant's counsel had engaged in no other pretrial discovery)..

At the close of the Plaintiff's case the Defendant-Appellee moved for a directed verdict which the trial court sustained. The motion to correct errors asserts errors with reference to the exclusion of evidence on damages, asserts error in regard to sustaining the motion for directed verdict at the end of the Appellant's evidence and error in denying Appellant's motion to reopen his case.

The fundamental consideration in this case is whether or not the evidence submitted by the Appellant was sufficient to survive a motion for directed verdict. The Appellant contends that it is and relies on res ipsa loquitur for his salvation. In this case there is no question with reference to the sufficiency of the pleading to invoke res ipsa loquitur. The proper con-

text for res ipsa loquitur was stated by Chief Justice Arterburn in *New York, Chicago & St. Louis Railroad Co.* v. *Henderson* (1957), 237 Ind. 456, 146 N. E. 2d 531, reh. den. 147 N. E. 2d 237. Speaking for a majority of the Supreme Court at 237 Ind. page 462, he stated:

"Negligence, as any other fact or condition, may be proved by circumstantial evidence and it has been urged that there is nothing distinctive about the doctrine of *res ipsa loquitur* since it involves merely the permissible drawing of an inference of negligence from certain surrounding facts. This no doubt is true except that the law permits the inference of negligence to be drawn under certain sets of facts known as *res ipsa loquitur*. The basis or reasoning for this principle, in its origin at least, seemed to have been that the defendant *had exclusive control* over the injurying agency and the plaintiff normally had no access to any information about its control and operation." (our emphasis)

See also *American Legion Home Association* v. *White* (1958), 239 Ind. 138, 154 N. E. 2d 109 and *Baker* v. *Coca Cola Bottling Works at Gary* (1961), 132 Ind. App. 390, 177 N. E. 759.

The evidence most favorable to the Appellant in this case is that he was following a truck with "Werner" on its side in the early morning hours and struck an object in the right hand lane of the highway upon which he was traveling, which object turned out to be an air compressor. That air compressor and a companion air compressor across the road located in another part of the highway were later picked up by representatives of the Appellee, Werner Transportation Company.

Every law student worth his salt knows that when a flour barrel falls from a miller's window and strikes someone on an adjacent sidewalk that the concept of res ipsa loquitur permits a factual inference of negligence. In this regard, one of our English brethren, over 100 years ago, said:

"It is the duty of persons to keep barrels in a warehouse to take care that they do not roll out, and I think that such case would, beyond all doubts afford prima facie evidence of negligence. A barrel could not roll out of a ware-

house without some negligence, and to say that a plaintiff who is injured by it must call witnesses from the warehouse to prove the negligence seems to me preposterous."

*Eyrne* v. *Boadle* (1863), 2 H. & C. 722, 159 Eng. Rep. 299 (Court of Exchequer).

It could be easily argued in this case that the unexplained presence of an air compressor on a traveled highway is sufficient in itself to invoke the rule of evidence known as res ipsa loquitur. However, the evidence in this case is absolutely and completely inadequate upon an essential element of the concept of res ipsa loquitur, namely, proof of exclusive control by the Defendant.

In *Galbraith* v. *Busch* (1935), 267 N. Y. 230, 196 N. E. 36, Judge Lehman, speaking for the Court of Appeals of New York, stated:

"All that the evidence shows is that the accident may have occurred from any one of many causes, including, perhaps, negligence in operation. If knowledge of the actual cause is confined to the defendants, then the plaintiff cannot prove any cause of action without calling them as witnesses. Nonetheless, the plaintiff fails to make out a prima facie case without such proof and cannot place upon the defendant the burden of exculpating themselves from the charge of neglect of duty until evidence showing prima facie that there is such negligence has been presented."

In a later case the same judge, speaking for the same court, a few years later emphasized the need to offer some evidence of the defendant's exclusive control of the instrumentality which produced the injury. See *George Foltis, Inc.* v. *City of New York* (1941), 287 N. Y. 108, 38 N. E. 2d 455.

In *Pittsburgh C. C. & St. L. Railroad Co.* v. *Hoffman* (1914), 57 Ind. App. 431, 107 N. E. 315, the court approved the application of res ipsa loquitur although conceding that the plaintiff was struck by a piece of coal, and that such coal came from the defendant's train was purely circumstantial. The testimony showed only that as the train was passing the

plaintiff looked up and saw a missile coming toward his face from the direction of the train and that later he was found in an injured condition, his face covered with coal dust and pieces of coal and slate marked with blood were lying near him. In *Hoffman* there was minimal evidence from which the trier of facts could determine that the defendant had exclusive control over the object which struck the plaintiff. In this case there is a total absence of such minimal evidence. For a collection of cases involving res ipsa loquitur and objects from moving trains, see 41 A. L. R. 2d 932. At page 938 of 41 A. L. R. 2d it is stated:

> "Since, in order to justify application of the doctrine of res ipsa loquitur, the instrument or appliance causing injury must ordinarily be shown to have been in the defendant's exclusive control, the courts in actions involving injury or damage alleged to have been caused by objects falling from trains have refused to apply the doctrine where there was no sufficient showing of such control on the defendant's part." (notes omitted)

For the application of res ipsa loquitur regarding objects being transported which fall from motor vehicles, see 66 A. L. R. 2d 1255.

We find and hold in this case that there is no evidence whatsoever from which a jury could be permitted to find that the Appellee had exclusive control over the air conditioning unit prior to the Appellant's collision with it on the highway. There is no question that an air conditoning unit on a highway is analogous to a flour barrel on a sidewalk if there is sufficient proof to show the exclusive control of those items before they land respectively on the highway and on the sidewalk. The evidence in this case is absolutely deficient of any probative value whatsoever in this regard.

The standards for directed verdicts have been stated frequently in our Supreme Court and by this court. In *Hendrix v. Harbelis* (1967), 248 Ind. 619, 230 N. E. 2d 315, our Supreme Court stated:

"The quantum of evidence necessary for a plaintiff to avoid a directed verdict at the close of his evidence has been determined by our Supreme Court to be *any* evidence or legitimate inference therefrom tending to support at least one of the plaintiff's allegations. Specifically, our Supreme Court has held it is only where there is a *total absence of evidence* or legitimate inferences in favor of plaintiff upon the issues, or where the evidence is without conflict and is susceptible of but one inference and that inference in favor of the defendant, that the Court may give a preemptory instruction . . ." (Emphasis in the original.)

See also *Sears* v. *Moran* (1945), 223 Ind. 179, 59 N. E. 2d 566. Perhaps the best summation and synthesis of these rules can be found in *Mamula* v. *Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N. E. 2d 849.

To submit this case to the jury on the above evidence would permit the kind of guessing, speculation and conjecture which has been repeatedly condemned by this court and our Supreme Court. For example see *Halkias* v. *Gary National Bank* (1968), 142 Ind. App. 329, 234 N. E. 2d 652.

Given all of the liberal premises in favor of the Plaintiff-Appellant which are found in the *Hendrix, Sears* and *Mamula* cases we here determine, as a matter of law, that the evidence in this case was absolutely and completely insufficient to take the case to the jury. There was therefore no error in granting the directed verdict.

The Appellant moved to reopen the case in order to introduce evidence to show the Defendant-Appellee, Werner Transportation Company, had picked up the two units in question. Evidence to this effect was already in the record and was undisputed. In addition such motions are in the sound discretion of the trial judge and we do not here find an abuse of that discretion. See *Gehring* v. *Ohm* (1929), 90 Ind. App. 300, 168 N. E. 613.

The remainder of the Appellant's argument pertaining to rulings on exclusion of evidence with reference to damages in

no way related to the issue of liability. The Indiana courts have consistently held that the exclusion of evidence going merely to damages is harmless error when a verdict or judgment finds no cause of action. See *Sheffield-King Milling Co.* v. *Spink Milling Co.* (1923), 81 Ind. App. 208, 141 N. E. 533; *Gilson* v. *City of Anderson* (1967), 141 Ind. App. 180, 226 N. E. 2d 921.

Therefore, the decision of the trial court should be and hereby is affirmed.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported in 284 N. E. 2d 861.