

FILED

Dec 28 2020, 10:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE
MENARD INC.

Leslie B. Pollie
Jessica N. Hamilton
Travis W. Montgomery
Kopka Pinkus Dolin PC
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jessica Whetstine, Barbara
Whetstine as Co-Guardian of the
Limited Guardianship, and
Christopher Whetstine as Co-
Guardian of the Limited
Guardianship

*Appellants-Plaintiffs,*

v.

Menard, Inc., and Tyler R.
Norrenbrock,[1]

*Appellees-Defendants*

December 28, 2020

Court of Appeals Case No.
19A-CT-2949

Appeal from the Vanderburgh
Circuit Court

The Honorable David D. Kiely,
Judge

Trial Court Cause No.
82C01-1210-CT-517

---

[1] Tyler R. Norrenbrock does not participate in this appeal. However, a party before the trial court is a party on appeal. *See* Indiana Appellate Rule 17(A) ("A party of record in the trial court . . . shall be a party on appeal."). We therefore include Norrenbrock's name in the caption.

**May, Judge.**

Jessica Whetstine, Barbara Whetstine as Co-Guardian of the Limited Guardianship of Jessica Whetstine, and Christopher Whetstine as Co-Guardian of the Limited Guardianship of Jessica Whetstine (collectively, "the Whetstines") appeal the trial court's judgment in favor of Menard, Inc.[2] ("Menard").[3] The Whetstines present four issues, which we restate as:

> 1. Whether the trial court abused its discretion when it denied the Whetstines' motion for default judgment based on alleged spoliation of evidence;
>
> 2. Whether the trial court abused its discretion when it denied the Whetstines' request to admit a photograph of an alleged Menard truck; and
>
> 3. Whether the trial court abused its discretion when it denied the Whetstines' request for a proposed jury instruction regarding res ipsa loquitur.

We affirm.

# Facts and Procedural History

---

[2] The corporation name is "Menard" but the stores are called "Menards." (*See, e.g.*, App. Vol. II at 32 (noting the name of the defendant as "Menard, Inc. a/k/a Menards").)

[3] The Whetstines do not appeal the trial court's judgment in favor of Norrenbrock.

[2] On May 26, 2012, Jessica and her boyfriend, Tyler Norrenbrock, were traveling on a motorcycle on I-164[4] as they went from Louisville, Kentucky, to Newburgh, Indiana. Norrenbrock hit a wooden pallet in the middle of the road shortly after exiting I-164 at Lynch Road. The impact threw Jessica from the motorcycle.

[3] Officer Mark Saltzman arrived at the scene and spoke with Norrenbrock, who was conscious. The crash report indicated Norrenbrock told officers he "saw a large object sail out of the back of the truck" and before he could "react, his motorcycle struck the pallet." (Tr. Vol. II at 35.) Jessica was unconscious and sustained substantial injuries. Officer Michael Sides also arrived at the scene and noticed a wooden pallet that witnesses to the accident had moved to the side of the road. Officer Sides also observed a shipping label within the vicinity of the accident.

[4] Local news broadcasted information about the accident the following morning. Nicholas Rebstock contacted police after seeing the news broadcast and told police that he had observed a wooden pallet on Interstate I-164 the night before. Rebstock reported that after he swerved to miss the item, he noticed a red or maroon pick-up truck with its back up lights activated as if it were backing up to retrieve the pallet. Employees of the local Menards store also saw a similar

---

[4] I-164 has since been renamed to be a part of I-69. (*See* Tr. Vol. II at 60 (testimony regarding renaming of I-164).)

news report and called police to identify the shipping label found at the scene as one used by Menard.

[5] On May 31, 2012, Detective Tony Mayhew investigated the case and contacted Menard Assistant Security Manager Paul Beutz. Detective Mayhew sent Beutz a picture of the shipping label and asked if Beutz could help with the investigation. Beutz identified the shipping label as one from "pollystyrene [sic][.]" (Tr. Vol. V at 40.) The shipping label was part of a delivery from a Menard distribution center in Holiday City, Ohio, to a Menards store in Owensboro, Kentucky, completed two weeks prior.

[6] At Detective Mayhew's request, Beutz also looked at the surveillance video for the Evansville Menards store shipping yard from day of the accident, searching specifically for a "pickup truck." (*Id*. at 41.) Beutz found a pickup truck, captured a still picture of it, and then sent it to Detective Mayhew, who eventually contacted the owner of the truck and eliminated the truck as a vehicle that dropped the pallet. Detective Mayhew did not ask Beutz for any additional surveillance footage.

[7] On October 1, 2012, Jessica filed a complaint against "John Doe" alleging Norrenbrock struck a wooden pallet in the middle of the highway that was negligently left there by an unknown party. (App. Vol. II at 28.) On May 23, 2014, Jessica filed an amended complaint against Menard and Norrenbrock alleging she was injured when the motorcycle driven by Norrenbrock hit a wooden pallet in the middle of the interstate and the collision was a result of

negligent conduct by Menard and Norrenbrock.  Menard filed its answer and affirmative defenses to Jessica's complaint on June 21, 2014.

[8]     On May 29, 2015, Menard filed a motion for summary judgment.  On October 9, 2015, Menard filed a supplemental brief in support of its motion for summary judgment.  On January 1, 2016, Jessica filed her memorandum in opposition to Menard's motion for summary judgment.  On February 18, 2016, Menard filed its reply brief in support of its motion for summary judgment.  On February 24, 2016, the trial court held a hearing on Menard's motion for summary judgment and denied the motion on February 29, 2016.[5]

[9]     On February 27, 2019, the Whetstines filed a second amended complaint. Norrenbrock and Menard filed their answers on March 1 and March 19, 2019, respectively.  On October 25, 2019, the Whetstines filed a motion for default judgment alleging spoliation of evidence or, alternatively, a request for a jury instruction regarding spoliation of evidence.  In that motion, the Whetstines alleged Menard failed to preserve the surveillance video from its loading yard on May 26, 2012.  Menard filed a motion opposing the Whetstines' motion for default judgment on November 5, 2019.  The trial court denied the Whetstines'

---

[5] On June 8, 2017, the Warrick Circuit Court established a limited guardianship over Jessica, naming her parents, Christopher and Barbara, as her guardians.  On July 17, 2017, Jessica filed a motion to substitute the Limited Guardianship as the plaintiff.  On July 31, 2017, and August 1, 2017, Norrenbrock and Menard, respectively, filed objections thereto.  Jessica filed a supplemental motion to substitute on December 13, 2018, and Norrenbrock and Menard again objected.  On February 4, 2019, the trial court entered an order allowing the co-guardians of the Limited Guardianship to be joined as parties in a representative capacity.

motion for default judgment during trial, prior to the presentation of evidence by Menard.

[10] The parties filed their proposed preliminary jury instructions on November 8, 2019, and their proposed final jury instructions on November 14, 2019. The trial court held a jury trial from November 11-15, 2019. During the jury trial, the Whetstines attempted to admit a photograph which they purported was a picture of a Menards enclosed trailer hauling behind it an open flatbed trailer stacked with wooden pallets. Menard objected, citing lack of foundation and lack of relevance. The trial court did not admit the evidence, finding that the Whetstines had not provided a proper foundation and the evidence was not relevant to the matter before the court. The jury returned a verdict in favor of Norrenbrock and Menard.

# Discussion and Decision

## 1. Default Judgment

[11] Our standard of review for a trial court's decision regarding a default judgment is well-settled.

> The decision to grant or deny a motion for default judgment is within the trial court's discretion. *R.R. Donnelley & Sons Co. v. N. Tex. Steel Co., Inc.*, 752 N.E.2d 112, 126 (Ind. Ct. App. 2001), *reh'g denied*, *trans. denied*. We reverse only if the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.* The trial court's discretion in granting or denying a motion for default judgment is considerable. *Green v. Karol*, 168 Ind. App. 467, 473, 344 N.E.2d 106, 110 (Ind. Ct.

App. 1976). "The trial court should use its discretion to do what is 'just' in light of the unique facts of each case." *Allstate Ins. Co. v. Watson*, 747 N.E.2d 545, 547 (Ind. 2001) (quoting *In re Ransom*, 531 N.E.2d 1171, 1172 (Ind. 1988)).

*Progressive Ins. Co. v. Harger*, 777 N.E.2d 91, 94 (Ind. Ct. App. 2002). "[A] default judgment is not generally favored, and any doubt of its propriety must be resolved in favor of the defaulted party." *Watson*, 747 N.E.2d at 547 (quoting *Green*, 168 Ind. App. at 474, 344 N.E.2d at 111). It is "an extreme remedy and is available only where that party fails to defend or prosecute a suit. It is not a trap to be set by counsel to catch unsuspecting litigants." *Id.* at 547.

> On the one hand, a default judgment plays an important role in the maintenance of an orderly, efficient judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation. On the other hand, there is a marked judicial preference for deciding disputes on their merits and for giving parties their day in court, especially in cases involving material issues of fact, substantial amounts of money, or weighty policy determinations. The trial court, in its discretion, must balance these factors in light of the circumstances of each case.

*Green*, 168 Ind. App. at 473, 344 N.E.2d at 110.

[12] "Spoliation is a particular discovery abuse that involves the intentional or negligent destruction, mutilation, alteration, or concealment of physical evidence." *N. Ind. Pub. Serv. Co. v. Aqua Envtl. Container Corp.*, 102 N.E.3d 290, 300 (Ind. Ct. App. 2018) (quoting *Popovich v. Ind. Dep't of State Revenue*, 17 N.E.3d 405, 410 (Ind. Tax Ct. 2014)). A party raising a claim of spoliation

must prove "(1) there was a duty to preserve the evidence, and (2) the alleged spoliator either negligently or intentionally destroyed, mutilated, altered, or concealed the evidence." *Id*. at 301. The Whetstines argue the trial court abused its discretion when it denied their motion for default judgment based on their allegation that Menard spoiled evidence when Menard did not preserve the surveillance video from its loading yard for the relevant time preceding the collision.

[13] During his investigation of the collision, Detective Mayhew asked the Assistant Security Manager of Menard, Beutz, for information from the surveillance tape, specifically footage of any pickup truck that might have picked up pallets on May 26, 2012. Beutz sent Detective Mayhew a still screenshot of a pickup truck that picked up pallets that day. Detective Mayhew contacted the owner of the truck and eliminated the truck as the one that may have dropped a pallet on I-164. Detective Mayhew did not contact Beutz again, and the surveillance footage of May 26, 2012, was destroyed after ninety days pursuant to Menard company policy. Jessica named Menard as a defendant in her amended complaint on May 23, 2014, almost two years after the accident. The Whetstines contend Menard's duty to preserve the surveillance footage "arose the moment Detective Mayhew spoke with Beutz." (Br. of Appellants at 31.)

[14] "The duty to preserve evidence occurs when a first-party claimant 'knew, or at the very least, should have known, that litigation was possible, if not probable.'" *Golden Corral Corp. v. Lenart*, 127 N.E.3d 1205, 1217 (Ind. Ct. App. 2019) (quoting *N. Ind. Pub. Serv. Co.*, 102 N.E.3d at 301), *trans. denied*. This

duty may exist prior to the commencement of a lawsuit. *Id.* at 1218. For example, in *Golden Corral*, our Court concluded that Golden Corral had a duty to preserve the buffet temperature logs because they were immediately put on notice of Lenart's illness, which she claimed was caused by a foodborne pathogen, and Lenart's attorney contacted Golden Corral within the ninety-day record retention period. *Id.*

[15] Such is not the case here. Detective Mayhew contacted Beutz shortly after the accident, and Beutz reviewed the relevant surveillance footage, sending Detective Mayhew a still photograph of a truck on which pallets had been loaded. Detective Mayhew testified that he investigated the vehicle and determined it was not a vehicle of interest in the case. Detective Mayhew testified he did not instruct Beutz "to retain the video of the lumber yard" and did not "inform him that Menards was under investigation[.]" (Tr. Vol. II at 100.) Detective Mayhew testified he "never reached back out to [Beutz] for additional information . . . once [he] received the information from him about the truck that left the lumber yard on May 26, 2012[.]" (*Id.*)[6]

---

[6] The Whetstines note two other instances in which a person associated with the investigation asked Menard employees for information and were referred to Menard's corporate counsel. In the first instance, Norrenbrock's mother spoke to the Evansville Menards store manager and was referred to corporate counsel. In the second, Larry Craddock, "a retired police officer, [who] was a friend of the Whetstine family and agreed to assist in the investigation[,]" (Appellants' Br. at 13), spoke with the shipping supervisor in Holiday City, Ohio, and was referred to corporate counsel. However, the Whetstines do not indicate how an employee's referral to corporate counsel when asked to provide information and documentation about specific incidents has any bearing on the duty to preserve unrelated evidence, specifically, the surveillance tape from the Evansville Menards store.

[16]   Further, when Jessica filed her claim for damages arising from the accident in October 2012, she did not name Menard as a defendant. Instead, she indicated the proximate cause of her injuries from the collision "was negligent conduct on the part of unknown parties." (App. Vol. II at 28.) She did not name Menard as a defendant until almost two years after the collision, on May 23, 2014. Menard had no way of knowing that it would be a party to Jessica's claim; it would appear Jessica did not believe Menard to be responsible for her injuries when she filed her original claim. We cannot say Menard had notice that it would be subject to litigation at any time prior to its addition as a defendant in Jessica's claim because no one contacted Beutz again after Beutz gave Detective Mayhew the still photograph from the lumber yard on the relevant date. Therefore, we conclude Menard did not have a duty to preserve the surveillance tape relevant to this case, and thus spoliation did not occur.[7]

## 2. Admission of Evidence

[17]   We review the trial court's admission of evidence for an abuse of discretion. *Henderson v. Henderson*, 139 N.E.3d 227, 236 (Ind. Ct. App. 2019). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id*. The Whetstines argue

---

[7] As we hold Menard did not have a duty to preserve the surveillance video, there was not spoliation of evidence. Therefore, the Whetstines' argument that the trial court abused its discretion when it did not give a jury instruction regarding spoliation fails because there was no evidence to support such an instruction. *See Otter Creek Trading Co., Inc. v. PCM Enviro PRY, LTD*, 60 N.E.3d 219, 226 (Ind. Ct. App. 2016) (trial court does not abuse its discretion when it denies a party's request to include a jury instruction when there is no evidence to support the instruction), *reh'g denied*, *trans. denied*.

the trial court abused its discretion when it did not admit a photograph allegedly depicting a Menard truck with an enclosed trailer pulling an open flatbed trailer stacked with wooden pallets.

[18] During trial, Menard called Stewart Hite, the general manager of the Menard's store in Evansville, Indiana, as a witness. He testified that Menard did not use flatbed trailers to haul wooden pallets like the pallet found at the scene of the accident and that any unused pallets were loaded on enclosed trailers for shipping between stores. On cross-examination, the Whetstines attempted to admit a photograph they "obtained . . . just searching through Google images of Menards trucks." (Tr. Vol. V at 73.) The image depicted a semi-trailer with the Menard logo on it hauling an open trailer of wooden pallets behind it. (Ex. Vol. II at 190.) The Whetstines wanted to use the image to impeach Hite's testimony "that [Menard] did not transport pallets on flatbed trailers." (Tr. Vol. V at 73.)

[19] Menard objected, arguing the image was irrelevant because Hite could only testify as to how pallets are shipped out of the Evansville store and the Whetstines had not laid a foundation for the admission the photograph. Menard asserted, "[W]e have Google searched a picture with no authentication, no background, no information. We don't know where it is. All we know is that's a truck with a Menards logo pulling a flatbed of pallets." (*Id*.) The Whetstines made an offer to prove, asking Hite questions about the image outside the presence of the jury. Hite testified the picture appeared to be fifteen to twenty years old and the semi-truck was owned by a "contract hauler"

based on the "USDOT authorities and everything . . . on the side of the truck[.]" (*Id.* at 75.)  Hite also testified that in 2012 Menards did not transport pallets on a flatbed trailer.  The court denied the Whetstines' request to admit the photograph, stating:

> Until you can lay a foundation that that photograph is relevant to the time we're talking about, I'm not going to admit the photograph.  So, if you want to make an offer to prove, you can put it in but I need foundation.  The only evidence I have is that it's not relevant at all to this time period.

(*Id.* at 78.)

[20]    The Whetstines assert they laid a sufficient foundation for the photograph and it was relevant to the issue whether Menard used open flatbed trailers to haul wooden pallets.  "To lay a foundation for the admission of evidence, the proponent of the evidence must show that it has been authenticated." *Hape v. State*, 903 N.E.2d 977, 989 (Ind. Ct. App. 2009), *trans. denied*.  Our Indiana Supreme Court explained the requirements for the admission of photographs for substantive evidence purposes over forty years ago:

> The "silent witness theory" for the admission of photographic evidence permits the use of photographs at trial as [s]ubstantive evidence, as opposed to merely demonstrative evidence. Thus, under the silent witness theory there is no need for a witness to testify a photograph accurately represents what he or she observed; the photograph "speaks for itself." III J. Wigmore, Evidence s 790 (Chadbourn rev. 1970).

\* \* \* \* \*

The foundation requirements for the admission of photographs as substantive evidence under the silent witness theory are obviously vastly different from the foundation required for demonstrative evidence. However, we feel it would be wrong to lay down extensive, absolute foundation requirements. Every photograph, the context in which it was taken, and its use at trial will be different in some respect. We therefore hold only that a [s]trong showing of the photograph's competency and authenticity must be established. Whether a sufficiently strong foundation has been laid is left to the sound discretion of the trial court, reviewable only for abuse. However, we stress our use of the adjective "strong." Photographs tend to have great probative weight and should not be admitted unless the trial court is convinced of their competency and authenticity to [a] relative certainty.

*Bergner v. State*, 397 N.E.2d 1012, 1015-7 (Ind. Ct. App. 1979). "Our courts have consistently held this requires the testimony of a witness who can state the photograph is 'a true and accurate representation of the things it is intended to depict.'" *Id*. at 1014.

[21] Here, the Whetstines attempted to admit a photograph from the internet depicting what is purported to be a Menards tractor-trailer hauling two additional open bed trailers behind it. On one of the open bed trailers, there seem to be wooden pallets. The Whetstines did not indicate what site they used to obtain the photograph, except to state that they "obtained . . . [by] just search through Google images of Menards trucks." (Tr. Vol. V. at 73.) The Whetstines did not establish a date the picture was taken, except that Hite testified he thought it was approximately fifteen to twenty years old. The Whetstines did not inform the court where the picture was taken, nor how,

whether it be by an automatic camera such as a surveillance camera, or a personal camera. Based thereon, we cannot say the Whetstines established a "strong" showing of the photograph's authenticity – in fact, they barely laid any competent foundation at all. *Cf. Torres v. State*, 442 N.E.2d 1021, 1024-5 (Ind. 1982) (sufficient foundation laid for admission of photographs when evidence adduced photographs had not been altered, a witness identified the people in the photographs, a witness identified the place the photograph was taken based on her personal knowledge, and a witness approximated the date the photographs were taken).

[22] Additionally, the image is irrelevant. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. Further, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.

[23] Hite testified, "[t]his is a very old picture and that is a form of a you know split trailer with a van and a flatbed that was used - - I mean I'm really guessing here - that it's at least 15 years old, at least, if not 20." (Tr. Vol. V at 76.) The Whetstines did not present any additional information in their offer to prove to suggest the age of the photograph, specifically whether it depicted a Menard truck during the time period of the collision. Without information regarding

when the picture was taken, where it was taken, and whether the truck was one that had ever actually been used by Menard, we cannot say that the picture was relevant. Moreover, its introduction would run the risk of confusing or misleading the jury when there was no evidence to suggest any such truck was in the Evansville area in the days, weeks, or months prior to the accident that injured Jessica. We therefore conclude the trial court did not abuse its discretion when it denied the Whetstines' request to admit the photograph. *See* Ind. Evid. R. 402 ("[i]rrelevant evidence is not admissible"); *and see* Ind. Evid. R. 403 (trial court "may exclude relevant evidence if its probative value is substantially outweighed" by "confusing the issues" or "misleading the jury").

## 3. Jury Instructions

At the conclusion of the trial, the Whetstines proposed the following jury instruction:

> There are certain situations in which the nature of an incident and the circumstances surrounding it lead to the reasonable belief that it would not have occurred unless someone did not use reasonable care.
>
> If the Plaintiff proves all of the following by the greater weight of the evidence:
>
> > (1) The Plaintiff was injured when the vehicle operated by Tyler Norrenbrock struck a pallet on I-164;
> >
> > (2) Only the Defendant Menard, Inc. controlled the pallet; and

> (3)     Under normal circumstances, the collision with the pallet would not have occurred unless Defendant Menard, Inc. was negligent,

then you may infer that the incident resulted from Defendant Menard, Inc.'s negligence.  You may consider this inference with all of the other evidence in arriving at your verdict.

(App. Vol. IV at 112.)  The language of the proposed instruction is nearly identical to Indiana Civil Model Jury Instruction 325 for res ipsa loquitur.  The trial court denied the Whetstines' request to include the proposed instruction.  The Whetstines argue the trial court abused its discretion in doing so because the instruction was supported by evidence.

[25]  Instructing the jury is a matter assigned to the sound discretion of the trial court.  *Burdick v. Romano*, 148 N.E.3d 335, 340 (Ind. Ct. App. 2020).  We review the court's decision only for an abuse of discretion.  *Humphrey v. Tuck*, 132 N.E.3d 512, 515 (Ind. Ct. App. 2019).  When we review a trial court's refusal of a tendered instruction, we consider: 1) whether the tendered instruction is a correct statement of the law; 2) whether there is evidence in the record to support the instruction; and 3) whether the substance of the instruction is covered by other instructions given by the court.  *Otter Creek Trading Co., Inc. v. PCM Enviro PRY, LTD*, 60 N.E.3d 219, 226 (Ind. Ct. App. 2016), *reh'g denied*, *trans. denied*.  Jury instructions are intended to inform the jury of the law applicable to the facts without misleading the jury and to enable the jury to comprehend the case clearly and arrive at a just, fair and correct verdict.  *Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 278 (Ind. Ct. App.

2001). Accordingly, a trial court properly rejects an instruction that would "mislead or confuse the jury." *Burdick*, 148 N.E.3d at 340.

[26] The doctrine of res ipsa loquitur

> literally means "the thing speaks for itself." *Shull v. B.F. Goodrich Co.*, 477 N.E.2d 924, 926 (Ind. Ct. App. 1985), *trans. denied.* Res ipsa loquitur is a rule of evidence which permits an inference of negligence to be drawn based upon the surrounding facts and circumstances of the injury. *K-Mart Corp. v. Gipson*, 563 N.E.2d 667, 669 (Ind. Ct. App. 1990), *trans. denied.* The doctrine operates on the premise that negligence, like any other fact or condition, may be proved by circumstantial evidence. *Id.* To create an inference of negligence, the plaintiff must establish: (1) that the injuring instrumentality was within the exclusive management and control of the defendant or its servants, and (2) that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. *Id.* In determining if the doctrine is applicable, the question is whether the incident more probably resulted from defendant's negligence as opposed to another cause. *Id.* A plaintiff may rely upon common sense and experience or expert testimony to prove that the incident more probably resulted from negligence. *Vogler v. Dominguez*, 624 N.E.2d 56, 61 (Ind. Ct. App. 1993), *trans*[.] *denied.* To invoke res ipsa loquitur, the plaintiff must demonstrate that the defendant had exclusive control of the injuring instrumentality at the time of injury. *Aldana v. Sch. City of E. Chicago*, 769 N.E.2d 1201, 1207 (Ind. Ct. App. 2002), *trans. denied.* Exclusive control is an expansive concept which focuses upon who has the right or power of control and the opportunity to exercise it. *Shull*, 477 N.E.2d at 933.

*Rector v. Oliver*, 809 N.E.2d 887, 889-90 (Ind. Ct. App. 2004), *trans. denied.* It is undisputed that the Whetstines' tendered instruction was a correct statement of

the law and that the substance of the res ipsa loquitur instruction was not covered by any other instruction tendered to or given by the court. Thus, the issue before us is whether there existed evidence to support giving such an instruction. When determining whether to allow a party to include a jury instruction regarding res ipsa loquitur, the trial court must decide as a matter of law "whether the plaintiff has produced evidence from which a jury could reasonably find the existence of both of the underlying elements of res ipsa loquitur: exclusive control and probability of negligence." *Vogler*, 624 N.E.2d at 61. "There only need be evidence and reasonable inferences therefrom, which, when viewed in the light most favorable to the proponent, would support the jury verdict contained in the instruction." *Sharp v. LaBrec, Inc.*, 642 N.E.2d 990, 993 (Ind. Ct. App. 1994).

[27] The Whetstines argue the facts before us are akin to those in *Pittsburgh, Cincinnati, Chicago & Saint Louis Railway Co. v. Hoffman*, 57 Ind. App. 431, 107 N.E. 315 (1914). In that case, Hoffman, a train watchman, was struck in the head by a piece of coal that fell from a passenger train traveling westbound on a temporary track. *Id*. at 435, 107 N.E. at 316-7. The passenger train and the temporary track were both owned and maintained by the Railway Company. *Id*. at 435, 107 N.E. at 316. At trial, the trial court permitted a jury instruction regarding res ipsa loquitur, and the jury returned a verdict in favor of Hoffman. *Id.* at 440, 107 N.E. at 318.

[28] The Railway Company appealed, arguing in part that Hoffman had not presented sufficient evidence to support a jury instruction on the doctrine of res

ipsa loquitur. Our court affirmed the trial court's decision to permit the instruction, stating regarding the sufficiency of the evidence:

> [Hoffman] was struck by a piece of coal, and the jury, as we have said, were warranted in finding that such coal came from the tender; but there is no circumstance proven, which as mere matter of circumstantial evidence connects the fact of the falling of the coal with any human agency. But the tender and the engine and the coal thrown, and the handling and management of all these, were under the exclusive control of [Railway Company's] servants. We do not believe that coal properly and carefully loaded on an engine properly handled, keeping in view the nature of the track, would ordinarily fall from such tender upon persons near the track. It is in such a situation that the maxim res ipsa loquitur supplements circumstantial evidence, by raising a presumption from such facts unexplained that there was negligence in the loading or handling of the coal.

*Id*. at 450, 107 N.E. at 321.

[29] Here, taking the evidence most favorable to the Whetstines, we agree that Jessica's injury was caused when Norrenbrock struck the pallet situated in the middle of the road. There is no reason the pallet would be in the middle of the road except for it falling off of something transporting that pallet, which would, circumstantially, lead one to believe that the pallet was not properly loaded on that vehicle. Thus, the first element of res ipsa loquitur – that is, that the incident could not have happened if those who had management and control had exercised proper care – is satisfied. *See Farmer v. Werner Transportation Co.*, 152 Ind. App. 609, 615, 284 N.E.2d 861, 865 (1972) (holding the "unexplained

presence of an air compressor on a traveled highway" is sufficient to support one of the elements of res ipsa loquitur).

[30] However, the facts most favorable to the Whetstines here diverge from those in *Hoffman* as they pertain to whether the item that injured Jessica, that is, the pallet, was within the exclusive management and control of Menard. In *Hoffman*, the injured watchman Hoffman saw the passenger train owned and maintained by the Railway Company carrying the coal as it passed him on the temporary track. *Hoffman*, 57 Ind. App. at 435, 107 N.E. at 316-7. Here, there is no evidence that Jessica, Norrenbrock, or any witness saw the pallet leave a truck with a Menard logo or a vehicle that could be traced in any way to Menard.

[31] We confronted a similar issue in *Farmer*, where Farmer, a truck driver, was injured when his truck hit an air compressor on the side of the road. *Farmer*, 152 Ind. App. at 614, 284 N.E.2d at 865. As noted *supra*, we concluded that the presence of an air compressor on the side of the highway was sufficient to support the negligence portion of the res ipsa loquitur analysis. *Id*. at 615, 284 N.E.2d at 865. In support of the other element of res ipsa loquitur – proof of exclusive control of the instrumentality which caused the injury – Farmer presented evidence that he (1) had been following a truck with the word "Werner" on its side and (2) the air compressor involved in the collision with Farmer and "a companion air compressor across the road located in another part of the highway were later picked up by representatives of . . . Werner." *Id*. at 614, 284 N.E.2d at 865. We held that evidence was "absolutely and

completely inadequate upon an essential element of the concept of res ipsa loquitur, namely, proof of exclusive control" by Werner. *Id*. at 615, 284 N.E.2d at 865.

[32] There exists even less evidence here than in *Farmer*, where we held res ipsa loquitur could not be invoked. Here, there is no evidence any vehicle owned or controlled by Menard was in the immediate area where the collision occurred. The Whetstines rely heavily on the label found near the collision site, which was later identified as one belonging to Menard. However, if we analogize the label to the air compressor in *Farmer*, the label here provides significantly less indication that Menard was in exclusive control of the pallet in this collision because the label was from a product that was not shipped on wooden pallets and was part of a shipment traveling through the area two weeks prior to the collision. Therefore, based on *Farmer*, we cannot say that a label, found near the scene of the collision, for a product not found at the scene of the collision, would satisfy the requirement for res ipsa loquitur that the evidence most favorable to the Whetstines indicate that Menard had exclusive control over the pallet Norrenbrock struck. Therefore, the trial court did not abuse its discretion when it denied the Whetstines' request to include a jury instruction regarding res ipsa loquitur.

# Conclusion

[33] The trial court did not abuse its discretion when it denied the Whetstines' motion for default judgment based on spoliation of evidence because Menard

did not have a duty to preserve the relevant surveillance video. Additionally, the trial court did not abuse its discretion when it did not admit the Whetstines' proffered picture of an alleged Menard truck. Finally, the trial court did not abuse its discretion when it denied the Whetstines' proffered jury instruction regarding res ipsa loquitur because there was no evidence that Menard had exclusive control over the pallet at issue. Accordingly, we affirm.

[34] Affirmed.

Riley, J., and Altice, J., concur.